9   487
79   531
9   487
116  185

</div>

## H. G. ANGLE & CO. v. THE MISSISSIPPI & MISSOURI R. R. CO.

1. EVIDENCE. Instructions given by a purchaser of goods to the vendor, as to the manner of marking and shipping them, is not admissible in evidence for the plaintiff, in an action by the purchaser against the common carrier who undertook to transport them.

2. COMMON CARRIER. When a common carrier receives goods marked for a particular place beyond the terminus of his route, unaccompanied by any directoin sas to their transportation and delivery, except such as may be inferred from the marks themselves, he is *prima facie* bound to carry and deliver them according to the marks.

3. SAME. In an action against a common carrier, on a receipt or bill of lading showing the destination of the goods therein described, at a point beyond the terminus of the route of such carrier, it was held that parol evidence is admissible to show the termini of such carrier's route, the usage as to conveying beyond the same, and the knowledge of such termini and usage by the consignor. And it was further held that such usage, when known to the consignor, entered into and formed a part of the contract evidenced by the receipt or bill of lading.

4. AGENCY. Where an order was given to a firm of warehouse-men, authorizing them to receive from a railroad company all goods belonging to the drawer, carried by said company, after which said firm was dissolved, and a new firm, composed of a portion of the members of the old one, was formed; *Held*, that the new firm derived no authority from said order to receive goods for the drawer.

5. EVIDENCE OF AGENCY. In an action between a consignor and a common carrier, to recover the value of goods belonging to the consignor, and delivered by the carrier to a third party, facts and circumstances tending to show that such third party was the agent of the consignor, are admissible in evidence, even though such facts and circumstances were unknown to the defendant when the goods were delivered.

6. EVIDENCE TENDING TO SHOW AGENCY. Evidence admissible in an action by a consignor against a common carrier for damages resulting from a delivery of goods of the consignor by the carrier, to a third party, as tending to show the agency of such party, presented and discussed.

*Appeal from Scott District Court.*

MONDAY, OCTOBER 31.

Action for the non-delivery of goods, received by the defendants, as common carriers, to be transported and delivered according to contract.

The first count alleges that defendants, on 21st January, 1858, as common carriers, received twenty-three boxes, three bales, and three barrels of goods, of the value of ten thousand dollars, which, for a reasonable reward to be paid, they undertook to carry from Muscatine to Iowa City, and

H. G. Angle & Co. v. The Mississippi & Missouri R. R. Co.

deliver in like good order and condition, which they failed to do.

The second count, or rather the several succeeding counts, were upon several receipts of the following form:

"Rec'd, Muscatine, Jan. 21st, 1858, from Rowe & Williams, on board the M. & M. Railroad cars, the following packages in good order, marked and numbered as in the margin, to be delivered in like good order:

H. G. Angle & Co.,     ⎱ 4 boxes dry goods, No's 19,
     Cedar Rapids, Iowa. ⎰    9, 13, 4.

WM. DILL."

There were several of these receipts, differing only in the numbers of the boxes or other packages.  The petition contained the proper averments explaining the abbreviations, &c., and alleging that Dill was the agent of the company and authorized to make the contract.  In this second count the averment is that the defendants undertook to carry to Cedar Rapids.

The defendants answered, denying that they undertook to carry to Cedar Rapids, and denying that their contract extended beyond Iowa City; and alleging that they delivered in good order to the plaintiff's agents at the latter place, and that the plaintiffs were not there to receive them.

A verdict was rendered in favor of the defendants, and the plaintiffs appeal.

*James Grant*, for the appellant.

I. The whole conversation of Angle when he ordered the shipment of the goods, which related to the subject, was part of the *res gesta*, and should have been admitted in evidence.  1 Greenl. Ev. sections 108, 109; Starkey Ev. 63 and 301.

II. In England the rule is, that a mere receipt by a railway company, of goods marked and directed to a place beyond the terminus of their road, makes them liable, as carriers to the point of destination.  Redfield on Railways,

281; *Meschamp* v. *Lancaster & Preston Railway Co.*, 8 Mees. & W. 421; *Watson* v. *Ambergate, N. & B. R.*, 3 Eng. L. E. 18; Ib. 553, 557.

The American authorities are not harmonious, but all agree that a contract to deliver at a specific place, though beyond the terminus of the road, is binding on the contractor as a common carrier. Redfield on Railways, 282; *Weed* v. *Saratoga R. R. Co.*, 19 Wend. 534; *Bennett* v. *Filyan*, 1 Florida 403; *Bradford* v. *S. C. R. R. Co.*, 7 Richardson (Law) 201; 25 Wend. 660; 6 Hill. 157; *Wilcox* v. *Parmalee*, 3 Sand. S. C. 610; 9 Barb. 317; *Kyle* v. *Laurens R. R. Co.*; 10 Richardson, 382; *Foy* v. *Troy & Boston R. R. Co.*, 24 Barb., 382; *Carter* v. *Peck*, 4 Snead 403; 27 Ver. 110; *Jameson* v. *C. & A. R. R. Co.*, 4 Am. Law Reg. 234; *Chicago* v. *Ill. Central R. R. Co.*, Mss. opinion of Drummond, J.; 2 Scam. 288; *McGregory* v. *Kilgore*, 6 Ham. 358. The following authorities hold the contrary doctrine: *Hood* v. *N. Y. & New Haven R. R. Co.*, 22 Conn. 502; 1 Gray 502.

III. This paper writing contained an agreement, not for transportation to Cedar Rapids, but to deliver in good order to the consignee at Cedar Rapids, and parol evidence should not be admitted to prove the contrary. *White* v. *Van Kirk & Ashton*, 25 Barb. 16.

IV. Station agents who receive and forward freight, have power to bind the company, by contract, to carry beyond the terminus of their road. Redfield on Railways, 291.

V. By the common law, the carrier must deliver to the consignee without a demand. Angell Car. section 282; Story's, Bail. sections 346, 545. But carriers by water and railroads are required only to give notice to the consignee. Angell Car. 313; 2 Kent 604; Redfield on Railways 252; 1 Parson's Cont. 664; *Ostrander* v. *Brown*, 15 Johnson 39; *Chickering* v. *Fowler*, 4 Pick. 374; *Kohn & Borden* v. *Packard*, 2 La. 144; 17 Wend. 305; *Fisk* v. *Newton*, 1 Denio 45; *Price* v. *Powell*, 3 Com. 322; 6 Watts & S. 62; *Eagle* v. *White*, 6 Wharton 505; Angell Car. section 288; 16 Ill. 505; 14 Georgia 277; 32 N. H. 523.

VI. Agency may be implied from acts of the principal, inducing third parties to believe that the agency existed, but a knowledge of such acts by the party relying upon such agency, must be proved.  1 Par. Cont. 38 note *c*.

*Cook, Lindley & Clark*, for the appellees.

The appellees reviewed the authorities cited by the counsel for the appellant, and contended that in the absence of a special contract common carriers are liable only for the safe delivery of goods delivered to them at the proper station or terminus of their route, unless an established usage to carry to their destination, if beyond the terminus of their route, is shown; citing 4 Am. Law. Reg. 239; *Garside* v. *Trent, & Mersey Nav. Co.*, 4 T. R. 581; 2 Am. Railway C. 480; *Nutting* v. *Conn. R. R. Co.*, 1 Gray 502; 18 Ver., 140 ; 23 Ib. 209.    Even when the jury find against the weight of evidence or against the instructions of the court, a new trial will not be granted if the appellate court is satisfied that substantial justice has been done.  *Leigh* v. *Hughes*, 3 Scam. 18; Gilm. 475; 2 Ib. 285; *Milburn* v. *Beach & Eddy*, 14 Mo. 104; *Greenup* v. *Stokes*, 3 Gilm. 285; *Johnson* v. *Blackman*, 11 Conn. 342; *Aldorf* v. *Medill*, 4 Day 42; *Armington* v. *Cherry*, 10 Georgia 229; *Wood* v. *Wilds*, 6 English 754; *Scare* v. *Prentiss*, 8 East. 348.

WOODWARD, J.—The written receipts, of which a copy is given in the statement, together with the agency of Dill, were admitted, and it is not necessary to state the details of formal proof, further than this.  The leading questions of the case were whether the defendants' duty was to carry to Cedar Rapids, or to Iowa City; and whether they delivered the goods to an unauthorized agent of the plaintiffs.  The defendants carried the goods to Iowa City, and there delivered a small portion of them to a wagoner of the plaintiffs to transport to Cedar Rapids, and the remainder were delivered to the forwarding house of Eaton & Morse, on the

22d January, 1858, where they were burned, with the building, on the night of the 28th January.

The plaintiffs contend that the defendants' contract was to carry to Cedar Rapids; and secondly, if this is not so, still Eaton & Morse were not their agents, and the defendants had no authority to deliver the goods to them, and are responsible for them.

The plaintiffs assigned several errors, and the better method for examining the case will be to advert to these nearly in their order.

The first is to the suppression of part of Rowe's testimony. The plaintiffs purchased the goods of the firm of Rowe & Williams, at Muscatine, and they proposed to show that Angle directed Rowe, in shipping the goods, to mark them H. G. Angle & Co., Cedar Rapids, Iowa, and not to consign them to any forwarding house at Iowa City, and giving a reason for so doing. This testimony was ruled out. Upon consideration, we are of opinion that this ruling was correct, and that the declaration or direction of Angle could not be received. At the same time we do not perceive that it could have any other effect or force than is produced by the mere fact that the goods were so directed. This consignment governs, and the direction could do no more; and if it differed from this, would show the impropriety of its admission.

The second assignment is, to the decision of the court that the receipts did not constitute a contract to deliver the goods to Angle & Co., at Cedar Rapids. This question was an important one, and had a controlling influence in the case, especially in connection with that of the admissibility of evidence. It first arose in the early part of the case. It was proved that the defendants operated a railway from Muscatine to Iowa City, where it terminated on the west, and to Davenport, where it terminated on the east; that Cedar Rapids was a town about twenty-five miles north-west from Iowa City, and that there was no railway between the two; that goods were carried between by wagons; and that

it took a day to carry from Muscatine to Iowa City, and a day from there to Cedar Rapids.

The question here made is one of practical importance, and it is this: When goods are delivered to a carrier, marked for a particular place beyond the terminus of his route, but unaccompanied by any other directions for their transportation and delivery, except such as may be inferred from the marks themselves, is he bound to carry and deliver them according to the *marks*, or is he discharged by transporting according to the usage of the business in which he is engaged. In other words, do these receipts constitute a contract to deliver at Cedar Rapids; and can parol evidence be received to show facts tending to give a different meaning to the contract.

The court held that it was not a contract to deliver at Cedar Rapids. We are clearly of the opinion that on its face, without other evidence, it is an agreement to deliver to Angle & Co., at Cedar Rapids. It seems as if this were easily settled by asking, if this is not the meaning, what is? To whom, then, and where were they to deliver? It is not like *Jameson* v. *Camden & Amboy R. R. Co.*, 4 Am. Law. Reg. 234. In that the shipping receipt was in similar form, the margin describing the goods as " 1 chest, marked Mathew Jameson, Camden, Ohio," and another memorandum in the margin was, "To be shipped for Camden, Ohio, from New York," but the body of the receipt said, "which we promise to deliver at our office, in New York." It is difficult according to our apprehension, to perceive how a considerable doubt could arise on such a writing. The question was upon the paper alone, there being no other evidence offered. Here it seems clear enough that the margin contains the " marks and number," including the destination, whilst in the body of the receipt is the contract, "to deliver at our office in N. Y." This bill of lading is, "received of M. J., one chest, marked and numbered as per margin." The description and destination are expressed separately from the contract to carry and deliver. It is easy for the carrier, in

such a case to express the point of carriage in the receipt, if it be different from the mark; and if he does not, as in the case at bar, it is implied that he is to deliver according to the marks.

In truth, no doubt would arise, we think, if the place of delivery so expressed in the margin, were on the usual route of the carrier, but the question on which there is a difference of opinion, is, whether evidence may be introduced showing what the route of the carrier is, and that the destination of the goods is beyond that; and whether he is bound to carry beyond his route. The defendant is a railway company; and these and steamboat lines, it is apparent, are confined, in their own operations, to their track, or their river or other waters. The one cannot leave the rail, nor the other the water. But they may have other agents and other methods of transportation, to carry beyond the rail and the water.

The English cases have settled the rule that a carrier, taking a parcel directed to a place, with no positive agreement, limiting his responsibility to a part of the distance, undertakes *prima facia*, to carry the parcel to its destination, though this be beyond the limits within which the carrier professed to carry. *Meschamp* v. *Lancaster & Preston Railway Co.*, 8 Mees. & W. 421. This case uses the term *prima facia*, but in other cases generally they are omitted and disregarded. The cases on this subject may be found in Redfield on Railways, sections 135 and 136, p. 281. We understand that the English cases make the written bill of lading, the evidence of the contract, and do not admit parol evidence to explain or limit it. But the mass of American authorities take the other view and hold that, though the contract is *prima facia*, as expressed on the face of the receipt, or bill of lading, yet evidence may be given showing the route, the termini and the usage of the carrier. Redfield *ut supra;* and 4 Am. Law. Reg. section 234 and 231. And one case has gone so far as to hold that it made no difference whether the usage were known to the consignor or not. 4 Am. Law. Reg. 236. We may omit the consid-

eration of this point, relative to the knowledge of the consignor, and passing this, we would say that we are inclined, decidedly, in favor of the American rule. When we look at railway and steamboat lines, and see them confined to their rail and the water, that they are great machineries for the transportation of persons and freight, that in some sense they are public, we cannot resist the idea that the facts of the termini of the routes and the usage of the business, when known to the consignor, like the law enter into the contract. Assume, for the moment, that Angle & Co. know these things; suppose there was evidence showing that they knew the termini of the road, and that they had done business with the railway, had received goods from it at Iowa City, which were consigned in a similar manner; and how is it possible to say that these things did not enter into the contract? The company receives goods to deliver in like good order, marked H. G. A., Cedar Rapids. Taking into view the supposed facts concerning the road, and the usage of the business, and it may be a contract to carry only so far as the route extends. And, accordingly, parol evidence is admissible to show these facts; that is, how far, and where the road runs; that the place named in the margin is beyond its terminus, and the usage as to carrying beyond, and the knowledge of the consignor.

It is said above, that it *may* be a contract to carry to their terminus only, for this depends upon the matter proved. It might be the duty of the company to deliver to a consignee at the turminus, or to a connecting line of agents for transportation; or if it were proved to be their usage themselves to forward by other means, then it would be their duty to so forward the goods. And therefore the evidence offered to show a usage of the company to transport beyond their termini, should have been admitted. The plaintiff would not be bound to a uniform and unvarying usage to that effect, but he might show that they sometimes did it, and that this was such a case. It will not be understood that the plaintiff may explain or change the language of the receipt, but that

he may show a custom of the road which makes this contract mean that they undertook to carry to Cedar Rapids. Thus he might show that the carrier used to carry to their destination, goods consigned in this manner. This reasoning is the necessary result of the position of the defendants themselves. If they may show any circumstances affecting the construction of the face of the receipt, so may the plaintiffs. And if the defendants may show a custom to carry to, and deliver at the terminus of their road, then the plaintiffs may prove the contrary, or any other usage affecting the contract. The court erred, therefore, in giving a construction to the bills of lading, in the early part of the trial, when deciding upon its face. Or if the court took into view the proofs, it was not in its province to adjudge upon these. It was competent to rule that evidence was admissible to assist in giving construction to the writing, but while the defendants might offer this, so the plaintiffs might also, and there was error in rejecting that offered by them to show that defendants did contract to carry beyond their termini. Some testimony on this point was admitted, whilst the greater part offered was rejected, which was probably an inadvertance, or on account of its connection with other points.

Though there was error upon the first construction of the contract, yet when the court come to instruct the jury, it was placed upon nearly the correct grounds. The court instructed that, *prima facia*, these receipts would bind the defendants to deliver the goods at Cedar Rapids; "that is," said the court in substance, "if the line of the railway extended from Muscatine to Cedar Rapids, then these receipts import an agreement on the part of defendants to carry the goods to Cedar Rapids; but if you find from the evidence that the road did not extend to Cedar Rapids, and that Iowa City was the terminus nearest thereto, and that there was no railway connection between Iowa City and Cedar Rapids, then the receipts did not require the defendants to carry to the latter place, but only to Iowa City. This instruction may be said to be correct as far as it goes. It

admits parol evidence in regard to the terminus of the road, but makes no provision for any usage, or for any connecting line which might be shown. The company *might* contract to carry beyond, and the plaintiffs should be permitted to show that they did. The instruction omits this contingency, probably because the evidence was rejected, and the liability is confined to the fact of the road extending .or not extending to Cedar Rapids.

We are aware that if evidence outside of the contract is admitted, a variety of conditions may arise, such as, not only the usage to carry beyond the terminus, and special, or rather particular, contracts to do so; but also the circumstance of connecting lines of railway, and connecting lines of other modes of transportation, instances of which will be found in the books before referred to ; but the present case is becoming too voluminous to allow us to touch upon these, and we must limit ourselves to the questions before us.

The result of the foregoing views, is that the court erred in the construction given to the contracts as presented at the time referred to in the second assignment; also in restricting too closely the first instruction of the court, to which exception is taken; and in rejecting evidence offered to show a usage, (or "habit,") of contracting to carry beyond the termini, which is the subject of the ninth assignment.

And it follows that there was no error in receiving the testimony of Sibley as to the custom of the road in regard to goods marked to points beyond their terminus at Iowa City, and not consigned to any forwarding house at Iowa City. The court permitted the question, whether, when goods are forwarded to Cedar Rapids, for instance, the company delivered at that place, or at Iowa City. There is no alternative between making the bill of lading the sole evidence of the contract, according to the English rule, and permitting evidence to show what business the road professed to do, in accordance with the American rule. And the lat-

ter accords with good sense and just views. Every one understands, and knows that, ordinarily, a railway company undertakes to carry on their line and route only. We say *ordinarily*, for we leave open a place for any exceptions, and for special contracts. It is doing violence to reason to hold that such bills of lading as these are not given and taken with a reference to a known course of business; and were we at liberty to refer to facts as proved in the case, there are several significant ones to which we might allude. But it would be improper when a new trial is to take place.

The fourth assignment relates to the evidence of the order to Thompson & Co. In the year 1857, there was a forwarding house at Iowa City, under the name of J. Thompson & Co., and consisting of Thompson, Eaton and Morse. This house disolved on the 31st December, 1857, and Eaton & Morse continued the business under that name. In the first half of 1857, Angle & Co. had given to Thompson & Co., an order on the railway company, (or their freight master,) to deliver to them all goods for Angle & Co., whether consigned to them or not. Before the close of the year 1857, some of that firm mentioned to Angle that the firm would change as above at the end of the year, and he remarked that it would make no difference, they would continue to do the business, or to that effect. When Eaton & Morse began business, the order formerly given to Thompson & Co., and handed to the railway agent, was taken from that agent and put among papers whose object had passed.

The defendant now claims to give evidence of this order. Though the proof is not brought very closely to the point, yet on the whole, it is fairly to be made out that the order was on the file in the office when the building burned, and therefore was destroyed with it. The court instructed the jury that Eaton & Morse, as the successors of Thompson & Co., derived no authority from this order, in favor of the latter, and this instruction was correct, in our opinion. But it was proper to allow the defendants to show the contents of this order, and the remark of Angle to Eaton & Morse, in refer-

ence to continuing the business, and it became the province of the jury to determine what effect to give to this remark, and to say whether this alone, or this with other things was evidence of giving to the new firm an authority co-extensive with that conferred upon the old one, or whether it gave them any.

The fifth, sixth and seventh assignments. It does not seem clear that Swalley testified about an order not produced. Two are exhibited in his testimony, and if another is referred to, it is not apparent, and it is not on any very material matter. The conversation between Young and Howlett should not have been given, although in Angle's presence. It related to no matter upon which his silence was significant. Crandell's evidence relative to the custom, has been disposed of in the preceding remarks. And Crandell's liability was too remote and contingent to render him incompetent.

Under the tenth and eleventh assignments, in relation to orders on Eaton & Morse, given to teamsters for other goods already in their hands, and the sending goods to them to ship away, we remark that, although these and other similar acts, taken singly, are not sufficient evidence of a general authority in Eaton & Morse, yet such acts are admissible to be presented to a jury, and it is for them to make the proper inference as to the authority implied by them. As to a dissent, or the want of a dissent, by Angle & Co., to any actions of Eaton & Morse, the jury are to judge of these from the circumstances, considering whether they had knowledge of the acts, and whether they had opportunity for dissent, and whether the circumstances called for it. To authorize the railway company to deliver the goods to this house, they should show, either some rule of their own, or a direct authority, or a usage of Eaton & Morse to receive their goods, known to, and recognized by Angle & Co., or at least not dissented from by them.

The instructions were numerous. The plaintiffs requested many, several of which were given; the court gave a series, and the defendant asked a number, all of which were

given. It will not be practicable, on account of the length of this opinion, to notice them severally, but we will briefly allude to some of the questions raised in them. Before coming to these, however, we will mention some matters of evidence bearing upon more than one of the instructions.

It was shown that the railway company had a set of printed rules posted up in their warehouse at Iowa City, three of which, bearing upon this case, are here given in substance:

The first is, "that articles will not be received for transportation unless properly packed in suitable cases, boxes, bales or packages; and each must be clearly marked with the name of the consignee, and of the station where they are to be delivered."

"*Fifth.* When articles, after transportation, are to be forwarded by some other company or an individual, to their destination, this company will not be responsible for them after they are so delivered."

"*Twelfth.* All articles of freight, on arriving at their place of destination, must be taken away within twenty-four hours after being unloaded from the cars—goods remaining uncalled for at the end of that time, will be placed in store, and storage charged on them."

It was shown that the railway company had at Iowa City a good, substantial and commodious warehouse. Also that they were in the practice of delivering to the commission house of Fiske & Elliott, at that place, all goods not consigned to any house there, and which some other house was not authorized to receive. It was in proof that on the same day when these goods arrived, viz: on 22d January, 1858, there were also twenty barrels of salt received, shipped by different consignors from Muscatine, and consigned to no one at Iowa City, but marked, like these, to Angle & Co. at Cedar Rapids; that the latter gave a teamster an order direct on the freight agent for the salt, who sent him to Eaton & Morse, and Peck, their clerk, went to the warehouse of the company and delivered two loads of salt and two barrels of glassware, part of the goods shipped by Rowe. Peck testi-

fies that, on merely calling for them, he received the goods in controversy for Eaton & Morse, and without any special direction or authority. And Eaton testifies that they had no authority to receive them.

We are of the opinion that, under the twelfth rule, the liability as carrier does not cease on unloading the goods into the warehouse, within the twenty-four hours, but that it continues that length of time, unless they are delivered to one authorized to receive them. In the present instance, this time is fixed by their own rule. But as the loss did not occur till long after this period, the question cannot be fairly made as to their liability on account of delivering the goods before the twenty-four hours expired. It arises rather upon the authority of the person to whom they were delivered.

A number of the instructions have reference to this point last named, that is, whether the company was justified in delivering the goods to Eaton & Morse; in other words, whether they were the general agents of the plaintiffs. In order to show that they were, the defendants offered evidence of several business transactions between them, but of some of which the defendants had no knowledge when they delivered the goods, and, though it is not stated distinctly in that form, yet the question enters into that of the admissibility of evidence and into the instructions, whether the defendants are justified by the fact of agency, or only by what they knew; that is, whether they are limited to showing that they had sufficient reason to believe the agency, or whether they may show the fact even by proving circumstances tending to show it, but of which they had no knowledge at the time. It is quite clear that they are not limited to showing facts of which they had notice. The defendants were bound to deliver to the right person. Angel on Carriers, sections 300, 321, et. seq., and authorities there cited. They delivered at their peril, in this respect, and however much reason they might have to believe Eaton & Morse to be the general agents, still they could not defend, unless such was the fact. It follows, that though they may have acted upon slight evi-

dence, they may show their conclusion to be right, by proving facts of which they had no knowledge at the time. Therefore the objection of the plaintiffs to the evidence of certain transactions between the plaintiffs and Eaton & Morse, because the defendants had no knowledge of them then, and so did not act upon them, was not well taken, and there was no error in overruling it. And so the instructions asked, so far as they conflict with this doctrine, were rightly refused. This was one ground upon which the testimony of several witnesses was sought to be ruled out. But these remarks go only to the above reason for rejecting it.

The proof referred to above, and sought to be excluded, was such as that Angle & Co. sent flour, &c., to Eaton & Morse, to be sent away, and the sending to them for goods received by them. It does not appear, at least in all cases, how such goods came into their hands, whether by order, consignment, &c. It is to be remembered that the goods in question were not consigned to Easton & Morse. The defendants then, needed to prove a general agency, or a special one for this case. Several instances of employment, or of special agency, would not constitute them general agents to receive all goods of the plaintiffs. In *Ostrander* v. *Brown*, 15 John. 39, the court say, in a case very similar in principle, "because a merchant usually selects a cartman, and employs him exclusively in carrying goods according to his order, it by no means follows that such cartman is his general agent for receiving goods without orders." The order to Thompson & Co., was a general one to receive even unconsigned packages, but this was taken up from the freight agent by Eaton & Morse themselves, and the court instructed ·correctly, that this conveyed no such authority to Eaton & Morse. The defendants needed to show in them an authority to receive goods not consigned to them; and whether this is shown by the plaintiffs' sending goods to them to ship, or by their taking from them such as had come into their hands, is a question for the jury under the sanction of their office. The defendants might show that they received

goods unconsigned, and this would have weight according as the circumstances indicate that the plaintiffs both should, and could, object to their so doing.

Sixth instruction requested by plaintiffs. The duty of defendants to deliver to another carrier at Iowa City, to be transported to Cedar Rapids, must depend upon there being such a regular communication; and it does not appear that there was such. But it appears to us that this point is superceded by the actual position of the case. The court instructed that the defendants are liable, unless Eaton & Morse were authorized to take the goods, and, consequently, unless the defendants were justified in delivering to them. And the same tenor of instruction covers the question about delivering before the twenty-four hours expired. The court held that they might deliver within that time, if to the owner or an authorized agent. These instructions we think correct, and it is upon this point that the cause turns. As the error first alluded to (in relation to the second assignment,) was rectified in a subsequent instruction, the only ones remaining are those relating to the ninth and thirteenth instructions; and of these, that upon the ninth is the material one.

Upon this the judgment must be reversed.