## STATE OF IOWA;

### DES MOINES, JUNE TERM, A. D. 1873.

IN THE TWENTY-SEVENTH YEAR OF THE STATE.

PRESENT:

Hon. JOSEPH M. BECK, Chief Justice.
" CHESTER C. COLE, ⎫
" WILLIAM E. MILLER, ⎬ Judges.
" JAMES G. DAY, ⎭

---

### MULLIGAN v. ILLINOIS CENTRAL RAILWAY Co.

1. **Railroad:** LIABILITY FOR GOODS SHIPPED BEYOND TERMINUS. The acceptance by a railroad company of goods marked to a designation beyond the terminus of its road, creates a *prima facie* liability to transport to and deliver the goods at that point, which, however, may be modified by proof of a different usage known to the shipper at the time of making the consignment.

2. —— While the law imposes upon common carriers the duty of carrying all goods offered to them in the usual course of business, it does not impose upon them the duty of transporting goods beyond the termini

of their respective routes, and they may, therefore, by special agreement, contained in a bill of lading or receipt, lawfully stipulate that they shall not be liable beyond such point.

3. —— By the shipper accepting and acting upon such bill of lading, his knowledge of its stipulations will, in the absence of fraud or mistake, be conclusively presumed, and he will be bound thereby. He will not be permitted to show that he was ignorant of its contents.

4. **Pleading:** EFFECT OF SUBSTITUTED PETITION. While a pleading which is superseded by a substituted one, ceases to tender any issue, yet it remains a part of the record in the case, and the opposite party may avail himself of a distinct admission of a fact contained therein.

*Appeal from Dubuque District Court.*

WEDNESDAY, MARCH 19.

ACTION for the value of 1,440 pounds of bacon and 20 tubs of butter, which were shipped upon the defendant's line of railway, consigned to C. T. Buddecke & Co., New Orleans, and which failed to reach the consignee. Evidence was introduced tending to show that at the time of shipment the agent of defendant delivered to plaintiff a receipt or bill of lading, the material portion of which is as follows :

"READ THIS CONTRACT."
"DUBUQUE STATION, *Sept. 4th*, 1871.

"Received of James Mulligan, in apparent good order, by the Illinois Central Railroad Company, consigned to ———, the following articles, as described in the margin, to be transported to ——— station, subject to conditions and regulations as per published tariff of said company, and payment of freight and such other expenses or charges as may have occurred on said articles. It is expressly agreed and understood that the company are not responsible for loss of goods of which the contents are unknown. * * * And it is further expressly understood that for all loss and damage occurring in the transit of said property, the legal remedy shall be against the particular carrier or forwarder only, in whose custody the said property, whether by delay, or otherwise, may actually be at the time of

Mulligan v. Illinois Central Railway Co.

the happening thereof, it being understood that the said Illinois Central Railroad Company assumes no other responsibility as to said property, than such as may be incurred on its own road.  *  *  *

| Marks and Consignee. | No. | Description of articles. | Weight. |
|---|---|---|---|
| C. T. B. & Co., New Orleans, La....... | 1 | Box meat.......................................... | 1,440 lbs." |

The bill of lading for the butter was in all respects like the above, except as to date and description of property. There was no proof of any contract on the part of defendant further than as implied from the receipt of the goods marked and consigned as above stated, and the execution of the bills of lading. It was proved upon the trial that the defendant was incorporated under special statute of the State of Illinois, and authorized to construct, maintain and operate a railroad from the southern terminus of the Illinois and Michigan canal to the city of Cairo, with certain lateral branches, and that Cairo is the southern terminus of defendant's line of road. Evidence was also introduced tending to show that at the time of the shipment aforesaid, and prior · thereto, the defendant held itself out as a carrier of freight south of Cairo, only so far as to deliver it to connecting lines, and that in due time, and in the regular course of business according to its usual custom, it shipped the meat on the steamer Indiana, and the butter on the steamboat Virginia, boats running between Cairo and New Orleans, and took the proper receipts of the respective clerks therefor. It was shown that the Indiana is still running, and that the Virginia was sunk at Cotton Wood Point, in the Mississippi river, in October, 1871.

Against the objection of defendant plaintiff was permitted to testify that he did not know when he shipped the goods that defendant undertook to limit its liability to Cairo, and that he did not accept the receipt with a knowledge of the condition contained therein, nor with the intention of assenting that the Illinois Central Railroad Company should not be bound beyond its own line of road. Jury trial. Verdict and

judgment for plaintiff for $380.41. Defendant appeals. The further necessary facts are stated in the opinion.

*Crane & Rood* for the appellant.

*Smith, Fouke & Chapin* for the appellee.

Day, J.— The court instructed the jury as follows:
"If you find that defendant received the goods in controversy consigned and marked for New Orleans, then in the absence of any agreement, limiting its liability, it was bound to deliver the same at New Orleans, and if it failed so to do it would be liable in this action. But such liability may be changed by a special contract, and if defendant, at the time of receiving the goods, executed to plaintiff the receipts admitted in evidence, and plaintiff received the same knowing their contents, then defendant is not liable in this action.

The defendant excepted to this instruction, and now assigns the giving of the same as error.

This instruction embraces three propositions:

*First.* The liability incurred by a railroad company by the simple acceptance of goods consigned to a point beyond the terminus of its road.

*Second.* How this liability is affected by the delivery to, and acceptance by, the shipper, of a bill of lading, limiting liability to its own line of road.

*Third.* The effect of ignorance, upon the part of the shipper, of the conditions contained in the bill of lading accepted by him.

A discussion of these propositions will embrace the leading questions presented by this appeal.

I. *As to the liability which a railroad company incurs by*

1. RAILROAD: liability for goods shipped. *the mere acceptance of goods consigned to a point beyond the terminus of its road.*

Upon this question there is a striking lack of uniformity in the decisions. There are three views which have been maintained by their respective advocates, with, perhaps, equal cogency of reasoning:

Mulligan v. Illinois Central Railway Co.

*First.* That where carriers receive and receipt for goods consigned to a point beyond the terminus of their road, without any special contract respecting the same, the agreement is one for transportation the whole distance, upon which the first carrier may be sued for a loss occurring after the goods have passed beyond the terminus of its road.

The first case which has generally been cited as announcing this doctrine is *Muschamp* v. *Lancaster R. R. Co.*, 8 M. & W. 421, decided in the court of exchequer in 1841, followed and re-enforced in *Collins* v. *Bristol & Exeter R. R. Co.*, 11 Exch. 790, and extended even to goods booked beyond the limits of England. See, also, *Illinois Central R. R. Co.* v. *Copeland*, 24 Ill. 332; *Angle & Co.* v. *The Mississippi & Missouri R. R. Co.*, 9 Iowa, 487.

*Second.* That where a carrier receives goods marked for a particular designation beyond the terminus of its line, and does not expressly undertake to deliver them at the point designated, the implied contract is only to transport over its own line, and forward, according to the usual course of business, from its terminus. See *McMillan et al.* v. *M. S. & N. I. R. R. Co.*, 16 Mich. 120; *Van Santvoord* v. *St. John*, 6 Hill, 157; *Farmers and Mechanics' Bank* v. *Champlain Transportation Co.*, 23 Vt. 186; *Brintnall* v. *The Saratoga and Whitehall R. R. Co.*, 32 id. 665; *Hood* v. *N. Y. & New Haven R. R. Co.*, 22 Conn. 1 and 502; *Elmon* v. *Naugatuck R. R. Co.*, 23 id. 457; *Naugatuck R. R. Co.* v. *The Waterbury Button Co.*, 24 id. 468; *Nulting* v. *Conn. River R. R. Co.*, 1 Gray, 502; *Burroughs* v. *Norwich and Worcester R. R. Co.*, 100 Mass. 26; *Darling* v. *R. R. Co.*, 11 Allen, 295; *Root* v. *The Great Western R. R. Co.*, 45 N. Y. 524; *Jemison* v. *Camden and Amboy R. R. Co.*, 4 Am. Law Reg. 234; *United States Express Co.* v. *Rush et al.*, 24 Ind. 403; *Pennsylvania Central R. R.* v. *Schwarzenberger*, 45 Penn. St. 208; *Rome R. R. Co.* v. *Sullivan, Cabot & Co.*, 25 Ga. 228.

*Third.* That the mere acceptance of goods by a common carrier marked to a designation beyond the terminus of its

line as a matter of *law* imports no absolute undertaking upon the part of the carrier beyond the end of its road, but is a matter of evidence to be submitted to the jury, from which, in connection with other evidence produced, they are to determine, as a question of *fact*, the real engagement entered into.

This position was very ably maintained in a recent and elaborate opinion of the supreme court of New Hampshire, reviewing almost the whole current of decisions from *Muschamp* v. *The Lancaster Railway Co.*, 8 M. & W. 421, down to the present period. See *Gray* v. *Jackson*, 51 N. H. The question is not an open one in this State. In *Angle* v. *The M. M. R'y Co.*, 9 Iowa, 487, the rule was settled as it is understood to exist in England, and it was held that the acceptance by a carrier of goods marked to a designation beyond the terminus of its road, creates a *prima facie* liability to transport to and deliver at that point, which may be modified by proof of a different usage known to the shipper at the time of making the consignment.

The court did not err, therefore, in the first branch of the foregoing instruction, as applied to the evidence introduced, there being no proof that plaintiff knew of a usage of the defendant not to transport freight beyond Cairo.

II.  *As to the effect of the bill of lading:*

The law imposes upon common carriers the duty of carrying all goods offered to them in the usual course of business when they have the means of transportation and the proper compensation is tendered.

But the law does not impose upon such carriers the duty of undertaking to transport goods beyond the termini of their respective routes.

Whenever liability for such transportation exists it arises either from express contract or from an implied agreement arising from the acceptance of goods consigned to points beyond the termini of their routes. As they are originally under no obligation to undertake to transport beyond the end of their lines, it is clear that they may, by special agreement, stipulate that they shall not be liable beyond such point. *Fowles* v. *Great*

*Western R'y Co.*, 16 Eng. L. and Eq. 531; Pierce on Railroad Law, 458; *Detroit & Milwaukee R. R. Co.* v. *Farmers & Millers' Bank of Milwaukee*, 20 Wis. 122.

A bill of lading possesses the *dual* character of a receipt, evidencing the delivery of the goods to the carrier's possession, and a contract containing the stipulations under which the transportation is to be undertaken. The only reasonable construction which can be placed upon the bill of lading in this case is that it contains a positive stipulation that the defendant does not agree to carry beyond the terminus of its road. It is not an agreement to carry beyond such terminus, with a stipulation that it shall not be liable for injuries happening beyond that point. It concludes as follows: *it being understood that the said Illinois Central Railroad Company assumes no other responsibility as to said property than such as may be incurred on its own road.*

What are the duties of a common carrier respecting goods placed in its possession for transportation? To convey them safely and with reasonable dispatch as far as its agreement extends, and to forward thence according to the usual course of business. Does, then, this company undertake to carry to New Orleans, and at the same time stipulate that for a refusal to perform this agreement it shall not be responsible? This construction involves an inconsistency.

The provisions of this bill of lading are not in conflict with chapter 113, Laws 1866, which simply provides that, when the duties of a common carrier are undertaken, the company shall not, by receipt, rule or regulation, exempt itself from the full liabilities of a common carrier, which, in the absence of such contract, etc., would exist. The effect of the agreement in this case is that the defendant did not assume the duties of a common carrier beyond Cairo, the southern terminus of its road. It is clear to us that if this contract was so accepted or acted upon by the plaintiff as to be binding upon him, that the defendant is not liable for a loss occurring beyond the limit of its line of road.

III. *As to the effect of the shipper's ignorance of the terms of the bill of lading by him accepted.*

From the abstract it appears that the conditions in this bill of lading were printed upon its face, and the attention of the shipper was called thereto by the direction. " *Read this contract*," printed in italics. There is no evidence of any fraud, imposition or mistake. A bill of lading, like a deed poll and many other classes of contracts, is signed by one party only, and in such case the evidence of assent upon the part of the other party usually consists in his accepting and acting upon it. And the evidence of assent derived from his acceptance of the contract without objection is usually conclusive. In this case the defendant tendered to the plaintiff a contract containing the stipulations and conditions under which defendant was willing to undertake the transportation of the goods offered, and challenged an examination of its contents by the first sentence which would have met the plaintiff's eye, if he had taken the trouble to look at it. From an acceptance of this paper without protest or objection the defendant had a right to presume that plaintiff assented to its terms. It would therefore operate as a fraud to permit plaintiff now to say, "I did not read the bill of lading, was not aware of its contents, did not know that you undertook to limit your liability to Cairo, and did not assent that you should do so."

It not appearing that any fraud or imposition was practiced, nor that any mistake intervened, the plaintiff must be conclusively presumed to have become acquainted with its contents, and if he did not do so the consequences of his folly and negligence must rest upon himself. Courts cannot undertake to relieve parties from the effects of such inattention and want of care. If once they should enter this doubtful domain, it is impossible to foresee to what lengths their interference might be pressed, or of what limits it would finally admit.

These views are abundantly sustained by authority. For a full and masterly discussion of the question see opinion of COOLEY, J., in *McMillan et al.* v. *M. S. & N. I. R. R. Co.*, 16 Mich. 80, and cases there cited; also, *Kallman* v. *U. S.*

*Ex. Co.*, 3 Kan. 205 ; *How* v. *New Jersey Steam Nav. Co.*, 11 N. Y. 491; *Hopkins* v. *Westcott et al.*, 7 Am. Law Reg. (N. S.) 533.

In Illinois it is held, but contrary, as we believe, to the weight of authority, that it is a question of fact whether a party accepting a bill of lading knew of its conditions and assented thereto. *Merchants' Union Ex. Co.* v. *Joseph Schier*, 55 Ill. 140.

In making the defendant's discharge from liability under the bill of lading, to depend upon the plaintiff's knowledge of the contents thereof, and in submitting to the jury, under the circumstances of this case, the question of such knowledge, the court, in our opinion, erred.

IV. For the reasons above stated there was also error in allowing the plaintiff to testify that he did not accept the receipt with a knowledge of the condition contained therein, nor with the intention of assenting that the defendant should not be bound beyond its own line of road.

V. But one further question demands our consideration. In his original petition plaintiff alleges that at the time he shipped the bacon and butter he received there-

4. PLEADING: effect of substituted petition. for receipts, and he attaches them as exhibits to his petition. These receipts are the same as the bill of lading set forth in the preceding statement of facts.

Afterward the plaintiff filed a substituted petition, in which he states that he withdraws all pleadings before filed. In this he makes no mention of having received any receipts or bills of lading at the time of shipment. The defendant asked the court to instruct the jury that " The plaintiff in his pleadings admits that at the time the goods mentioned in his petition were delivered to defendant, he received from said defendant bills of lading or receipts therefor."

The court refused to give this instruction, and such refusal is assigned as error. In our opinion the instruction should have been given. Although the plaintiff stated in his substituted petition that he withdrew all pleadings before filed, yet this did not operate to withdraw from the files the original

petition. Rev., § 2983. It ceased to tender any issue to which defendant was called upon to respond, or which plaintiff might make the foundation of his claim. Yet it remained a part of the record in the case, containing a distinct and solemn admission of a fact.

And in the absence of any showing that this admission was made improvidently or through mistake, it must be taken as conclusive. 1 Greenl. on Ev., §§ 205, 206.

Reversed.