## BEARD & SONS v. THE ST. LOUIS, ALTON AND TERRE HAUTE RAILWAY COMPANY.

1. **Carriers:** CONTRACT TO TRANSPORT GOODS: INTERPRETATION. The acceptance by a carrier in the state of Illinois of goods for transportation, which are marked for carriage beyond the terminus of such carrier's line, establishes *prima facie*, under the laws of that state, a contract for the transportation of the goods to their place of destination, so as to make such carrier liable for

| | |
|---|---|
| 79 | 527 |
| 83 | 745 |
| 79 | 527 |
| 86 | 330 |
| 79 | 527 |
| 115 | 616 |
| 79 | 527 |
| 116 | 185 |
| 79 | 527 |
| f143 | 563 |

damage to the goods through the negligence of a subsequent carrier; and it makes no difference that the carrier so accepting the goods is not the initial carrier, but itself received the goods from a previous carrier.

2. **Appeal**: NEW DEFENSES NOT CONSIDERED. Defenses not pleaded and relied on in the court below cannot be considered when raised by argument in this court.

3. **Carriers**: TRANSPORTATION OF BUTTER: CARS TO BE USED. A railroad company which undertakes to transport butter a long distance in hot weather is not relieved from the duty of carrying it in refrigerator cars, on the ground that the rate of charges named is the rate for common cars. The contract being silent as to the kind of cars to be used, the company is obliged to use such cars as are necessary to transport the butter in good order. (Compare *Beard v. Railway Co., ante,* p. 518.)

*Appeal from Cedar Rapids Superior Court.*—HON. JOHN T. STONEMAN, Judge.

FILED, FEBRUARY 10, 1890.

ACTION to recover damages for injury sustained, through negligence of defendant, to a large quantity of butter shipped by plaintiff from West Union, Iowa, to New Orleans, Louisiana; the butter being carried over a part of the route by defendant. The cause was tried without a jury, and judgment was entered for defendant. Plaintiffs appeal.

*Rickel & Crocker*, for appellants.

*Mills & Keeler*, for appellee.

BECK, J.—I. The butter in question was shipped from West Union upon the Burlington, Cedar Rapids & Northern railway. Its destination was New Orleans. It passed over two other railroads before it reached St. Louis, and by the last one transporting it, the Wabash, St. Louis and Pacific, it was delivered to a transfer company, and was carted across the Mississippi river bridge, and delivered to defendant. It was transported to St. Louis in refrigerator cars, and was in good condition when delivered to defendant, by whom it was put in common cars, and in a few hours transported to

Duquoin, Illinois, and the cars then delivered to the Illinois Central Railway Company, whose road extended to New Orleans. It was transported by the latter company to New Orleans in the cars in which it was transported by defendant, and was greatly injured by the heat of the cars. It is shown that the butter was delivered by defendant to the Illinois Central Railway Company in good order and condition. It was transported to St. Louis in refrigerator cars, and in a few hours after it was taken from these cars delivered by defendant to the Illinois Central Railway Company, and was transferred by that company in the common cars in which it was delivered to it. There were two separate shipments of butter involved in this action, but the two transactions present the same state of facts. The receipts executed by the defendants for the butter are in the following form :

"No. 5632.      CAIRO SHORT LINE.

" Wagon No. 91-96.

"East St. Louis, 5—30—1885.

"Received from St. Louis Transfer Company, in good order, the following property for transportation:

" Consignee, Wm. Beard & Son.

" Destination, New Orleans, La.

" Consignor, Wab. Pro. 2794, M. W.

| Marks. | Description of Articles. | Weight. | Trans. Chgs. |
|---|---|---|---|
| 107 | ·Tubs butter.<br>O. R.<br>Chgs.,  -  -  -  $41.70 | 6950 | 3.48 |

"H. Roederer, Agent.

"(Copy.)                    D. 5-30.

" Nfy. C. H. Lawrence & Co., New Orleans, La..

" Mkd. Cloverdale Cry."

The way-bills accompanying the butter are in this form :

Beard & Sons v. The St. L., A. & T. H. Ry. Co.

Form 176.

## ST. LOUIS, ALTON & TERRE HAUTE RAILROAD CO.

(ST. LOUIS & CAIRO SHORT LINE.)

"Weighed at.................

"Gross.... ...............

"Tare.... ...............

"Net...............

No. W. B., 59.　No. of car, 2503.　Whose car, B.

"May 30, 1885.

"From East St. Louis to New Orleans, La.

| Shipper. | Consignee and Destination. | No. of pkgs. | Description of Articles. | Weight. | Rate per 100 lbs. | Advanced Charges. | Prepaid over other lines. | Freight Prepaid. | Freight Unpaid. |
|---|---|---|---|---|---|---|---|---|---|
| 5132 71 | Wm. Beard & Son, New Orleans, La. Nfy. C. H. Lawrence & Co. | 107 | Tubs butter, O. R. (Marked Cloverdale Cry) | 6950 | 53 | 3.48 40.70 | | | 36.84 |

II.   We are of the opinion that the acceptance of the butter by defendant, marked so as to show its destination, and the receipt and way-bill showing that it was destined to New Orleans, and was to be transported there, with other facts of the case, established, *prima facie* at least, that defendant contracted to carry the butter to New Orleans.   Other facts tend in the same direction.   *Mulligan v. Railway Co.*, 36 Iowa, 181; *Angle v. Railway Co.*, 9 Iowa, 487.   The way-bill showing the place of the receipt of the goods and their destination is evidence of the contract to transport the goods to the place of destination.   *Railway Co. v. Pratt*, 22 Wall. 123.   But in view of the fact that the butter was received by defendant in Illinois, and therefore the contract for transportation was made in that state,   that contract must be enforced in accord with the law prevailing there, which holds that the acceptance of goods for transportation which are marked for carriage beyond the terminus of the receiving carrier's line of transportation establishes *prima facie* a contract for transportation to the place of destination of the goods.   *Railway Co. v. Wilcox*, 84 Ill. 240 ; *Railway Co. v. Montfort*, 60 Ill. 176; *Railway Co. v. Frankenberg*, 54 Ill. 97; *Railway Co. v. Johnson*, 34 Ill. 389.   We conclude that defendant was bound by its contract to transport the butter to New Orleans, and that the finding of the court below to the contrary, which we are required to presume, as the finding of the issues were for defendant, is wholly without support of the evidence.   Counsel for defendant insist that the cases just cited are not applicable to this case, for the reason that the carriers in each instance were "initial carriers."   We think the distinction cannot be urged in this case.

If it be true that an "initial carrier," by which expression we understand the carrier first receiving the goods, is bound for the default of connecting carriers, it is because of a contract binding him to that effect.

---

1. CARRIERS: contract to transport goods: interpretation.

Such a contract. may be expressed or implied from the facts connected with the transaction. If the "initial carrier" entered into no contract to that effect, he is not so bound. If he does so bind himself, he is liable for the default of the connecting carrier. Now, surely, there is nothing in the law forbidding the intermediate carrier to bind himself by contract to answer for the default of his connecting carriers. If he may so bind himself, no reason can be given why the same evidence, regarded as sufficient to establish a contract by the "initial carrier," will not establish such a contract made by the intermediate carrier. That the butter was injured by negligence in transporting it in a common car from Duquoin to New Orleans cannot be doubted. As defendant contracted for its transportation to New Orleans, it is liable for the injury sustained by the negligence of the connecting line, the Illinois Central railroad.

III. As we understand counsel for defendant, they insist that this action is based upon negligence, and not upon a contract. The position is not in accord with the record before us. The petition alleges that defendant "undertook to transport the butter over its line, and to the place of destination." As we understand the petition, plaintiff seeks to recover on this alleged contract, on the ground of the violation thereof by the defendant negligently transporting the butter, whereby it was injured.

IV. It is urged, against the view we have taken of the case, that it does not appear that the station-agent receiving the butter was authorized to contract for its transportation beyond the terminus of defendant's railroad. No such issue is raised in the pleadings, and it is not claimed, that the receipt for the butter was executed by the station agent without authority. Indeed, defendant, in his answer, admits the execution of the receipt, but denies that it was bound thereby to transport the butter beyond the terminus of its own

2. APPEAL: new defenses not considered.

line. The execution of the receipt, and the authority of the agent signing it to bind the defendant, are not put in issue. Defendant simply denies that the contract binds it to carry the butter to New Orleans. The interpretation of the contract to that effect is relied upon to sustain the defense, not the want of authority to execute it.

V. It is also objected that it is not shown in the record that the St. Louis Transfer Company had *THE SAME.* authority to contract for plaintiff with the defendant for the transportation of the butter beyond the terminus of its own line. No such defense is set up in the answer. On the contrary, it admits the execution of the receipt to the plaintiff. It cannot now insist that the receipt is inoperative, for the reason that it was received by one not authorized to contract for plaintiff. The point demands no further consideration.

VI. Counsel insist that the evidence shows that it was understood that the butter should be carried through from St. Louis to New Orleans in common 3. CARRIERS: transportation of butter: cars to be used. cars, and that various facts appearing in the evidence authorize such an interference. We cannot assent to this proposition. It may be admitted that the evidence shows no specific agreement for any specific class of cars entered into between the transfer company and defendant. The butter was delivered to defendant, and nothing said about the character of the cars to be used in its transportation. It may be admitted that the rate of charges named was the rate for common cars. But there was no agreement that the butter should be transported in such cars, and that due care should not be exercised in its transportation to protect it from injury on account of the heat. The carrier was bound to exercise the diligence demanded by law for the safety of the butter, and its protection from injury. It was bound to use the degree of diligence which a carrier must exercise for the safety of the goods he carries. It was bound to

provide refrigerator cars, or other cars, in which ice could be and should be used, to protect the butter from the heat; and until such cars could be provided it was required to put the butter in cold storage. See *Beard v. Railway Co., ante,* p. 518. This discussion leads us to the conclusion that the judgment of the superior court ought to be                    REVERSED.