L. M. HARTLEY, Appellant, v. THE ST. LOUIS, KEOKUK & NORTH WESTERN RAILROAD COMPANY, Appellee.

Connecting Carriers:    COMMON LAW LIABILITY. At common law a common carrier is not liable for the negligence of the employes of a connecting carrier, in the absence of any contract to that effect.

CONTRACTS EXEMPTING FROM LIABILITY. Code, section 2074, providing that no contract shall exempt a railway corporation from a liability which would have existed had no contract been made,

does not invalidate the limitation of liability in a contract, by which a railroad company contracted to transport property from one point to another, necessarily involving the use of connecting lines, and by the same instrument provides that it should not be liable for negligence of such connecting carriers.

*Public policy.*   Where a common carrier contracts to transport goods from one point to another, necessarily over connecting lines, it is not prevented on grounds of public policy from contractually limiting its liability for the negligence of connecting carriers.

LIABILITY OF CONNECTING CARRIER: *Acquiescence by shipper.*   Where the consignor of property which a railroad company agreed to transport from one point to another, partially over connecting lines, signed and received from the connecting lines bills of lading in which they assumed all liability, there was sufficient evidence that such consignor did not regard the original carrier as having assumed the carrier's liability for the entire distance.

*Same.*   Where a carrier contracted to ship stock beyond its own line on the connecting line, it is not liable to the consignor for stock loaded at a point beyond its terminus, and for which the consignor accepted a bill of lading from the carrier operating it at such a place.

*Appeal from Henry District Court.*—HON. JAMES D. SMYTHE, Judge.

FRIDAY, FEBRUARY 7, 1902.

ACTION to recover the value of a horse injured, as is alleged, while being transported from Oswego, Kan., to Yoakum, Tex., through the negligence of the agents and servants of the Missouri, Kansas & Texas Railway Company. Defendant is sought to be held liable on a contract of affreightment issued by its station agent at Houghton, Iowa, for through shipment of certain stock from that point to Yoakum, Tex. A jury was called, and at the close of plaintiff's evidence defendant moved for a verdict. The motion was sustained, and plaintiff appeals.—*Affirmed.*

*McCoid & Finley* for appellant.

*Trimble & Trimble* and *Babb & Babb* for appellee.

DEEMER, J.—The bill of lading issued by defendant's agent at Houghton, Iowa, contained the following: "Live Stock Contract.  *  *  *  Finish loading at Oswego, Kansas.    No. and initial of car: 1,590; Arm's Palace Horse Car.    Number of animals in each car, seven."

"That for and in consideration of $141.60 per car, subject to minimum weights as shown in published tariffs, the said railroad company agrees to transport one car loaded with horses (number of car, number of waybills, and number of animals as noted above) from Houghton, Iowa, to Yoakum, Texas; and the said first party, in consideration thereof, agrees to deliver the said animals to the said railroad company, for transportation between the points aforesaid, upon the following terms, viz.:  *  *  *  Nor shall said railroad company be liable for any loss or damage after delivery to any connecting line, nor for any loss or damage not incurred upon its own line; but, nevertheless, in the event that the said animals are to be transported beyond the line of the railroad of the second party upon and by any connecting line forming a part of the system known as the 'Burlington Route,' then it is expressly understood and agreed that this contract shall be for, and inure to the benefit of, the corporation operating such connecting line and such connecting line shall be liable to perform all the obligations of this contract." Pursuant to this contract, W. J. Hartley, plaintiff's brother, loaded seven horses in the car therein described, and defendant transported the car, with its contents, to Hannibal, Mo., the terminus of its line, and made timely delivery thereof to the Missouri, Kansas & Texas Railway Company. The latter company took possession of the car, and issued to Hartley a new bill of lading therefor, whereby it undertook to trans-

port the car from Hannibal, Mo., to West Point, Texas.
This bill of lading was signed by the company issuing it and
by Hartley himself. As he (Hartley) desired to put more
stock in the car, it was stopped at Oswego, Kan., a point
on the Missouri, Kansas & Texas line, and seven more horses
and one mule were put into the car by Hartley, according
to agreement as indicated on the face of the original bill of
lading. After these animals were added to those originally
placed in the car, the Missouri, Kansas & Texas Railway
Company, through its agent at Oswego, issued a new bill
of lading to Hartley, similiar to the one executed at Han-
nibal, Mo. This was also signed by Hartley, and it ex-
pressly provided that the Missouri, Kansas & Texas Rail-
way Company should transport the 15 head of horses from
Oswego to West Point enroute to Yoakum. The car was
then taken by the last-named company, and by it trans-
ported to its destination. While enroute from Oswego to
West Point, one of the horses loaded at Oswego was in-
jured at or near Denison, Tex., through the negligence and
carelessness of the employes of the Missouri, Kansas & Tex-
as Railway. Plaintiff contends that defendant is responsi-
ble for this negligence, for the reason that its contract is
one of through shipment from Houghton, Iowa, to Yoa-
kum, Tex., and that it cannot limit its liability under such
contract, because of section 2074 of the Code, which reads
as follows: "No contract, receipt, rules or regulations shall
exempt any railway corporation engaged in transporting
persons or property from the liability of a common carrier,
* * * which would exist had no contract, receipt, rule,
or regulation been made or entered into." He also relies on
a general rule of the common law to the effect that a com-
mon carrier cannot by contract limit its liability for negli-
gence.

So well settled is the rule that a common carrier is not
liable for the negligence of the employes of a connecting

line in the absence of contract, express or implied, that we need not cite authorities in its suport. At common law the duty of an independent carrier was performed when it safely and punctually transported the goods over its own line, and delivered them to the consignee, or to a connecting carrier. The initial company, in the absence of contract, is regarded simply as a forwarding agent, and is not liable for the default of subsequent carriers. *Beard v. Railway Co.,* 79 Iowa, 527; *Cobb v. Railroad Co.,* 38 Iowa, 601; *Mulligan v. Railway Co.,* 36 Iowa, 181. We need not go into the question of the quantum of evidence necessary to support such an agreement, for it is clear, we think, that defendant received and agreed to transport seven of the horses from Houghton to the point of destination. It is enough for our present purpose to say that the section of the Code relied upon does not apply, for the reason that, in the absence of contract, defendant was under no common-law liability for the negligence of the Missouri, Kansas & Texas Railway Company. In construing this statute it would be ridiculous to say that a contract which expressly limits liability shall be held to create one at common law. Without the contract defendant would not be liable for the negligence of a connecting carrier. This is plain. But it is said that because of the contract it is liable, and cannot limit that liability by and through the very contract which is said to create it. If no contract, receipt, rule, or regulation had been made in this case, there would be no liability. There was a contract, which plaintiff contends creates a liability, and it is said that this liability cannot be limited. This view entirely overlooks the fact that the liability is created by contract, and not by law, and in such cases the statute quoted has no application. This proposition seems so clear that no further argument is necessary. But plaintiff contends that, as defendant agreed to be responsible for the goods to their destination, it cannot limit its responsibility by contract; that

it voluntarily assumed the obligations of carrier over the whole route, and made of the connecting carriers agents, for whose conduct it is responsible; and that it is contrary to public policy to allow it to limit its liability, or that of its agents, for negligence. This argument is specious, to say the least, and it has received the sanction of some of the courts of the country. See *Ireland v. Railroad Co.,* 20 Ky. Law, 1586, (49 S. W. Rep. 188; Id., 453); *Galveston Railway Co. v. Allison,* 59 Texas, 193; *Halliday v. Railway Co.,* 74 Mo. 159 (41 Am. Rep. 309); *Cincinnati, H. & D. and D. & M. R. Co. v. Pontius,* 19 Ohio St. 221 (2 Am. Rep. 391); *Condict v. Railway Co.,* 54 N. Y. 500. In the first of these cases there was a strong dissenting opinion, which we think announces the better rule. The *Galveston Case* is fully explained and distinguished in *McCarn v. Railway Co.,* 84 Tex. 352, (19 S. W. Rep. 547, 16 L. R. A. 39, 31 Am. St. Rep. 51), where the true rule, as we understand it, was announced as hereinafter stated. In the New York case the delay was not of a connecting carrier, but by the initial one, as we understand it. And in a late case in Missouri it is held that, even in the face of a statute expressly providing that the initial carrier shall be liable for loss or injury to goods wherever occurring, a carrier may by contract limit its liability to injuries occurring on its own line. *Dimmitt v. Railroad Co.,* 103 Mo. 433 (15 S. W. Rep. 761). But see *McCann v. Eddy,* 133 Mo. 59, (33 S. W. Rep. 71, 35 L. R. A. 110). As we understand it, the connecting lines in the *Pontius Case* were either held to be partners, or there was such a traffic arrangement between them as made the two lines practically one. The great weight of authority supports the proposition that extraterminal liability may be excluded by express contract. See *Illinois C. Railroad Co. v. Frankenberg,* 54 Ill. 88 (5 Am. Rep. 92); *Tolman v. Abbot,* 78 Wis. 192, (47 N. W. Rep. 264); *Berg v. Railroad Co.,* 30 Kan. 561, (2 Pac. Rep. 639); *Central R. Bk. Co. v. Avant,* 80 Ga. 195, (5 S. E.

Rep. 78); *Alabama G. S. Railroad Co. v. Thomas,* 83 Ala. 343, (3 South. Rep. 802); *Little Rock & Ft. S. R. Co. v. Odom,* 63 Ark. 326 (38 S. W. Rep. 339); *Jones v. Railway Co.,* 89 Ala. 376, (8 South. Rep. 61); *McCarn v. Railway Co.,* 84 Tex. Sup. 352, (19 S. W. Rep. 547, 16 L. R. A. 39, 31 Am. St. Rep. 51); *Ortt v. Railway Co.,* 36 Minn. 396, (31 N. W. Rep. 519); *Louisville & M. R. Co. v. Tarter,* 19 Ky. Law, 229, (39 S. W. Rep. 698); *Pendergast v. Express Co.,* 101 Mass. 120; *McEacheran v. Railroad Co.,* 101 Mich. 264, (59 N. W. Rep. 612); *American Exp. Co. v. Second Nat. Bank of Titusville,* 69 Pa. St. 394, (8 Am. Rep. 268). Our own cases do not run counter to this rule, but, in so far as they shed any light on the question, sustain it. In *Mulligan's Case* it was held: First, that acceptance of goods by a carrier marked to a destination beyond the terminus of its road creates a prima facie liability to deliver at that point; second, that a bill of lading limiting liability in such a case is valid and binding; and, third, that under the facts appearing in that case defendant was not liable. During the course of the opinion the court, through Day, J., used this signficant language: "But the law does not impose upon such carriers the duty of undertaking to transport goods beyond the termini of their respective routes. Whenever liability for such transportation exists, it arises either from express contract or from an implied agreement arising from the acceptance of goods consigned to points beyond the termini of their routes. As they are originally under no obligation to undertake to transport beyond the end of their lines, it is clear that they may, by special agreement, stipulate that they shall not be liable beyond such point. The effect of the agreement in this case is that the defendant did not assume the duties of a common carrier beyond Cairo, the southern terminus of its road. It is clear to us that, if this contract was so accepted or acted upon by the plaintiff as to be binding upon him, that the defendant is not liable for a loss occurring beyond the

limit of its road." In *Peterson v. Railway Co.*, 80 Iowa, 92, there was a partnership arrangement between the different companies involved. This brought the case clearly within one of the well-recognized exceptions to the general rule heretofore stated. See, also, *Block v. Freight Line*, 139 Mass. 308, (1 N. E. Rep. 348). In *Robinson v. Transportation Co.*, 45 Iowa, 470, the contract was to ship "through, without transfer, in cars owned and controlled by the company." The defendant failed to comply with its contract, but unloaded the goods, and stored them in a warehouse, where they were burned during the Chicago fire. It was held that the taking of the goods from the cars and storing them in a warehouse defeated the exemption contained in the bill of lading. The same facts appeared in *Stewart v. Transportation Co.*, 47 Iowa, 229. In each of these cases the court makes it clear that the question involved was the rights of the parties where the carrier violated the terms of the contract as to the mode of transportation and the exemption was loss by fire. The supreme court of Texas, in *McCarn's Case*, supra, found that the contract was for a through shipment from San Antonio, Texas, to Chicago, Ill., and there was a limitation clause similar to the one in the contract before us. Speaking to the point now under consideration, that court said: "That in such a case a carrier may, by contract, protect itself against liability for loss not occurring on its own line, whether the shipment be wholly within the state or be interstate, we had deemed a settled question in this court;" citing numerous cases. "In England, and in some of the states of the Union, the mere receipt of goods to be carried to a destination beyond the line of the carrier who first receives them is held to evidence a contract to transport to such destination, while in others such receipt is not held to evidence a contract to convey beyond that carrier's line; but in the jurisdiction in which these diverse rulings are made there is a general concurrence of opinion on the proposition that the carrier may, by special contract,

exempt itself from liability for an injury to freight result-
ing after it has gone into the hands of another carrier to
be transported to destination. The ground of concurrence
is contract, which in some jurisdictions it is held is neces-
sary to relieve from liability for the act of a connecting car-
rier over whose line the freight must or does pass to its des-
tination; while in others it is held that, in the absence of
special contract, no such liability rests on the receiving
carrier for injuries accruing after it had safely passed the
freight to a connecting carrier.  *  *  *  Any one of the
companies may agree that over the whole route its liability
may extend. In the absence of a special agreement to that
effect, such liability will not attach, and the agreement will
not be inferred from doubtful expressions or loose language,
but only from clear and satisfactory evidence. Can an obli-
gation based alone on contract arise in the face of an ex-
press agreement that it shall not exist? There can be but
one answer: Under the weight of American authority the
contract in this case does not operate as a restriction on or
exemption from liability, for to give that liability, it, but for
the contract, must have existed, while the contract was, in
effect, an express agreement that no such liability existed
or was intended or understood to exist." These extracts
hardly do justice to the writer of the opinion, who, as it
seems to us, has in a masterly way demonstrated the fallacy
of a contrary view. The whole opinion is worthy of repro-
duction, but we are not justified in quoting from it
further. That plaintiff did not understand defend-
ant was assuming to transport the goods to destina-
tion, and taking upon itself the liability of a common car-
rier for the entire distance, is fully sustained by the testi-
mony. He elected to treat the connecting carriers not as
agents of the defendant, but as his own agents, and he re-
ceived from them bills of lading which he signed, wherein
the connecting carriers assumed all liability for the trans-
portation of the stock. Moreover, the defendant never re-

ceived the animal which was injured, unless it be said that delivery to a connecting line was a delivery to the defendant. That might be affirmed in some instances, but not here, we take it, for the Missouri, Kansas & Texas Railroad issued a bill of lading specifically covering the animals loaded at Oswego, Kan., which bill of lading was not only delivered in duplicate to plaintiff's brother, but also signed by him, before the car was started from Oswego. Some other matters are discussed, but, in view of what has been said, no pronouncement need be made therein.

The motion for a directed verdict was properly sustained, and the judgment is AFFIRMED.