# Empire Transportation Company *versus* Wamsutta Oil Refining and Mining Company.

1. It is the duty of a common carrier to provide a vehicle in all respects adapted to the purpose of carriage, and so constructed as to encounter the ordinary risks of transportation.

2. In default of the vehicle being of such character, the carrier becomes responsible for any loss consequent on such defect, or any to which it may have contributed.

3. When any merchandise is on the same train with cars loaded with combustible substance, easily ignited by sparks, it is the special duty of the carrier to take every available precaution against the spreading and communication of fire, should it occur.

4. An evident and simple measure of precaution is to have the coupling of the cars in such order that any one can be easily detached from the others, in time to be saved from the consequences.

5. The facts being that the coupling is defective and the car containing goods could not be detached from another car on fire, in time to be saved,—unless the defect was from inevitable accident,—the negligence and liability of the carrier are inferences of law from the facts.

6. When the carriage is defective at the time of an injury, and the defect contributed to it, the *onus* is on the carrier to disprove negligence.

7. The carrier must show that the defect arose, not from insufficiency of the vehicle, but from some subsequent accident beyond his control.

8. A carrier cannot by notice or limitation in contract or bill of lading protect himself from liability for negligence of himself or servants.

October 21st 1869. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Venango county :* No. 182, to October and November Term 1869.

This was an action on the case by the Wamsutta Oil Refining and Mining Company against the Empire Transportation Company, to recover damages for the negligence of the defendants as carriers, by which refined oil of the plaintiffs that the defendants were carrying had been destroyed by fire. The case was tried June 5th 1869, before Trunkey, P. J. The plaintiffs gave evidence that they had shipped 67 barrels of refined oil in the defendant's cars, and that a car of crude oil was loaded for another person at the same time; "the oil was standard light, 110° or upwards." Standard will not ignite by flame at lower than 110°, crude oil will ignite at 65° and below ;—that 2862 gallons of oil were destroyed.

Wm. Best testified : " I was foreman on the freight train on the 10th March 1868. On that morning about a mile and a half below Wetmore Station, I discovered fire in the front car next to the engine. There was an engine attached to the rear of the train as a pusher. We either cut the front engine from the train first or the first two cars from the rest of the train. The train was stopped and then the engineer reversed the rear engine and backed off all but the first two cars. We then tried to separate these two

cars.   We could not do it, because we could not get the pin out.
The pin was fast in some manner, I do not know how.   We then
broke into the second car and unloaded all the oil we could on
account of the heat.   The heat was coming in from the front car.
The second car caught fire from the first.   I do not know how the
first car caught.   Know of no other cause than sparks from the
engine, and I do not know that.   I think the train was on sched-
ule time, going at its usual speed.   The engine was supposed to
be in good condition.   The fire when I first discovered it was at
the end next the engine.   We had not much time to take the pin
out before the flames interfered with us.   We were going up a
grade.   I do not think the brakes were down on the first car.
Every effort was made to save the oil after the fire was disco-
vered.   We had no difficulty in getting the pin between the second
and third cars out.''

Geo. O. Downer testified : " Was conductor on this train.   The
train was going about ten or twelve miles an hour, had been on
time all the way.   I first discovered that the forward car on the
end next the forward engine was on fire.   The train was stopped.
I tried to pull the pin between the first and second cars out.   It
stuck for some reason or other, I do not know what.   We then
pulled the pin between the second and third cars.   The first and
second cars were burned.   The engine was not throwing any more
sparks than usual.   The first attempt to cut the train was to
separate the first and second cars.   The link might have slipped
by, and it might be that the links were not slacked, in that case
we could not take the pin out.   I do not know what was the rea-
son we could not take the pin out.   I do not know whether there
was any difference in this pin or coupling from other pins and
couplings or not.   The front engine did emit sparks.   I know it
took fire from the sparks from the engine.''

Wm. H. Burton testified : " I was brakesman on this train.   I
tried to take the pin out between the first and second cars but
could not do it.   I could not get the pin out because the link was
jammed.   The first or second cars were not coupled as cars are
usually coupled.   The coupling link could not have got in the
shape it did by sudden stopping.   It must have got in that shape
by going around a curve.''

The defendants gave in evidence their receipt to the plaintiffs
for the oil, subject to conditions following, the third of which was
" that the owner or consignee (in consideration of the extremely
hazardous nature of such merchandise, which is not covered by
any extra charge for transportation), hereby assumes all risk for
leakage, evaporation, and loss by fire, while in transit, or at de-
pots or in stations, or on board boats, vessels or lighters, from any
cause whatever, and all dangers and delays of railroad and water
transportation to destination, and in any claim or demand, suit at

[Empire Transportation Co. *v.* Wamsutta Oil Co.]

law or equity, against this company or transportation company, or agent, for loss or damage thereby, this bill of lading shall be deemed and taken as a release in full therefor." They gave evidence also that crude oil and refined oil were usually carried in the same train; that there was not enough refined oil shipped for trains exclusively of that kind. They gave evidence also by the engineer on the train, viz., "the fire caught in rear end of front car. The train was running on time. The engine was in good condition, with new spark arrester. The fire communicated with second car so quick we could not cut it off. It was almost instantaneous."

The second point of the plaintiffs was: "If the jury believe that the defendant placed the car containing plaintiff's refined oil in a train composed in part of cars loaded with crude oil, and the said car containing plaintiff's refined oil was coupled with a car containing crude oil, and the said crude oil was greatly more combustible than the refined oil—and the said crude oil was ignited by sparks from the engine, and communicated the fire to the car containing plaintiff's oil, by which it was destroyed—which sparks would not have ignited the refined oil—and that the coupling of the said refined oil car and the crude oil car in which the fire originated was defective, and that the defendant's servants endeavored to uncouple the said cars and could and would have uncoupled the said cars and saved the refined oil but for the said defective coupling, the plaintiff is entitled to recover."

This point was affirmed.

The verdict was for the plaintiffs for $678.18. The defendants took a writ of error, and assigned for error the answer to the plaintiffs' point.

*J. Ash* and *S. C. T. Dodd*, for plaintiffs in error.—The question of negligence was for the jury: McCully *v.* Clarke, 4 Wright 399; Penna. Railroad *v.* Ozier, 11 Casey 60.

*C. Heydrick*, for defendants in error.—A carrier is bound to provide a vehicle entirely perfect: New Jersey Railroad *v.* Kennard, 9 Harris 208; Hart *v.* Allen, 2 Watts 115. It was negligence to carry so inflammable a substance as crude oil with refined oil: Powell *v.* Penna. Railroad, 8 Casey 414. Under such circumstances more than ordinary care is required: Catawissa Railroad *v.* Armstrong, 2 P. F. Smith 286. The facts were such as required the court to pronounce that they were negligence: Glassey *v.* Hestonville Passenger Railway, 7 P. F. Smith 174; Pittsburg and Connellsville Railroad *v.* McClurg, 6 Id. 294.

The opinion of the court was delivered, January 3d 1870, by SHARSWOOD, J.—As a common carrier cannot, by a special

[Empire Transportation Co. v. Wamsutta Oil Co.]

notice or limitation in the contract or bill of lading, protect himself from liability for the negligence of himself or his servants, Pennsylvania Railroad Co. v. Henderson, 1 P. F. Smith 315, the only question in this cause was, whether the defendants had been guilty of such negligence. The error assigned is, that the court below took that question from the jury, by affirming the plaintiff's second point, by which they were instructed, that if they were satisfied that certain facts were proved, the plaintiffs were entitled to recover. The rule upon this subject was very clearly laid down in McCully v. Clarke, 4 Wright 399, in which it was said: "There are some cases in which a court can determine that omissions constitute negligence. There are those in which the precise measure of duty is determinate, the same under all circumstances. When a duty is defined, a failure to perform it is, of course, negligence." Other cases fully corroborate this doctrine: Powell v. Pennsylvania Railroad Co., 8 Casey 414; Pennsylvania Railroad Co. v. Ozier, 11 Id. 60; Pittsburg & Connellsville Railroad Co. v. McClurg, 6 P. F. Smith 294; Glassey v. Hestonville Passenger Railway Co., 7 Id. 172.

The duty of a common carrier is, to provide a vehicle in all respects adapted to the purposes of carriage, and so constructed as to be able to encounter the ordinary risks of transportation: Story on Bailments, § 509. It must be perfect in all its parts, in default of which, he becomes responsible for any loss that occurs in consequence of any defect, or to which it may have contributed: Hart v. Allen, 2 Watts 114; New Jersey Railroad Co. v. Kennard, 9 Harris 204. When merchandise, of whatever character, is carried on the same railroad train with cars loaded with a combustible substance, easily ignited by sparks from the locomotive engine—it is the special duty of the carrier to take every available precaution against the communication and spreading of the fire, if it should occur. An evident and simple measure is, to have the coupling of the cars in such perfect order that any one or more of them can be easily detached from the others, in time to be saved from the consequences. If the fact be that the coupling was defective, unless such defect was the result of an inevitable accident, and, in consequence of it, the car containing the plaintiff's merchandise could not be detached in time to be saved, the negligence and liability of the carrier, are inferences of law, from the facts.

But it is said that the *onus* in this case was on the plaintiffs below, to show that the defect of the coupling arose from the negligence or want of care of the defendants. We think not. When the carriage is proved to have been defective at the time of the injury, and that the defect contributed to the loss, the *onus* is then necessarily shifted to the carrier. He must rebut it by evidence that the defect arose, not from the insufficiency of the vehicle,

**13 P. F. SMITH—2**

into which the goods were loaded, but from some subsequent accident, beyond his control. This puts the burthen where it ought most properly to rest. The carrier ought to be able to show, with ease, by his servants, that the vehicle was inspected before the commencement of the trip, and everything found to be in good order. It would be very difficult for the plaintiffs to prove the contrary—that it had not been examined, or that it was in bad order when it started. On the trial of this case, in the court below, there was no evidence to show when, or how, the links of the coupling of the cars became jammed, so that they could not be separated in time. It was surmised by one of the witnesses, that it must have got into that shape by going around a curve. Even admitting this to be so, the important question remains unanswered, and which it was incumbent on the carriers to answer, when did this occur? Had it been shown to have happened during the course of the same trip in which the fire took place, and that it was not known to, or discovered by the carriers, or their servants, in time to be remedied, then, indeed, there might have been a question of negligence for the jury. But without any evidence as to this point, there was nothing for them but that which was submitted, whether the coupling of the car was defective, and that defect contributed to produce the loss.

Judgment affirmed.