## CAIN vs. WESTON.

*Contract construed.—Evasion of agreement.—Contract of sale and contract for manufacture, distinguished.*

1. W. contracted to sell to C. all the lumber he should manufacture, or have manufactured for him, at a certain place and time; and having logs at that place and time, which H. had agreed to saw for him, he entered into a contract by which he nominally sold them to H., but agreed to take his pay in lumber at a specified price, less than the market price. *Held,* that this was a mere device to evade his contract with C., and that he was liable to C. for not delivering said lumber to him.

2. A contract which, though nominally a bill of sale of lumber from H. to W., discloses that the lumber was to be thereafter sawed from specified logs, and in such manner as W. should direct, *held* not to be properly a contract of *sale,* but one for the *manufacture* of lumber, within the meaning of W.'s agreement with C.

APPEAL from the Circuit Court for *Milwaukee* County.

The defendant appealed from a judgment against him. The nature of the action, and the questions presented by the appeal, will appear from the opinion.

*Smith & Stark,* for appellant.

*Waldo & Van,* for respondent.

PAINE, J.   The defendant made a contract with the plaintiff, by which he agreed to sell to the plaintiff all the lumber he should manufacture, or have manufactured for him, at White Lake, in Michigan, during the

year 1866, not less than fifteen hundred thousand feet, nor more than twenty-five hundred thousand feet. This action was brought for a failure to deliver a certain quantity of lumber which the plaintiff claims the defendant had manufactured for him at White Lake during that year, and which he was therefore bound by the contract to deliver, the maximum amount stated in it not having been furnished.

The defendant's counsel claims exemption from liability only upon one ground; and that is, that the particular lumber to which the plaintiff's claim and proof referred, was not " manufactured for him," within the terms of the contract, but was bought by him at White Lake, and therefore he was not bound to deliver it.

Upon this question we agree with the plaintiff. The lumber was manufactured out of logs owned by the defendant, and for the sawing of which, at certain rates, he had a contract from the parties who actually sawed them, whose mill was at White Lake. The proof offered by the plaintiff shows very satisfactorily that the defendant, for the mere purpose of avoiding his obligation to deliver the lumber to the plaintiff, went to the parties with whom he had this contract for sawing, and nominally sold them the logs, upon an agreement that they were to saw them, and he was to take his pay in the lumber at a specified price per thousand feet. The parties sawing could make a little more under this arrangement than they were making under the old, and therefore assented to it. But the price at which the defendant took the lumber in pay for the logs, was several dollars less per thousand than the the same kind of lumber was selling for at the same place. This shows clearly enough that it was a mere shift or device to avoid the obligation of his contract with the plaintiff, by giving a new name to the manufacture of lumber for him.

But the court below went still further, and decided that even upon the new contract, as made by the

defendant with Hinchman and Covell, who sawed the logs, as interpreted upon its face, the lumber was still manufactured for the defendant within the meaning of his contract with the plaintiff. This was also correct.

That new contract was in writing.* It starts with language appropriate to a bill of sale of lumber by Hinchman & Covell to *Weston*. But it soon discloses that the lumber is not yet manufactured; that it is to be sawed by them out of the lot of logs they were then sawing upon, and it contained a provision that the lumber was to be sawed as *Weston* might direct, so far as the logs would permit. This, even though the logs had never been owned by *Weston*, nor nominally transferred by him to Hinchman & Covell as a mere device, would still be a contract for the manufacture of the lumber, instead of a contract of sale, so far as there is a distinction between the two.

This position was very ably and exhaustively illustrated by the argument of the respondent's counsel, though he cited no cases in support of it. Still, it is not without authority. A similar question has frequently arisen under that provision of the statute of frauds which requires a contract for a sale of goods, of more than a specified value, to be in writing. And the fair result of the cases is, that such a contract as that now under consideration was not a sale within the statute, but was a contract for the manufacture. It is

---

* The contract was in the following words: "August 14th, 1866. This day sold to *William Weston* five hundred and fifty thousand feet of good merchantable shipping boards and lumber, to be delivered on our dock, piled in separate lengths convenient for shipping. The said lumber to be sawed from the lot of logs we are sawing on at this time. The said *William Weston* agrees to pay nine dollars per thousand feet, and take the vessel's tally in market; and if any is lost in shipping, the said *William Weston* is to pay for the same—the loss to be estimated by the captain or mate of the vessel lost from; and the said lumber shall be paid for on the return of the vessel's tally, or sooner if said *William Weston* sees fit to do so. Said lumber to be sawed as said *William Weston* may direct, as far as the logs will permit." Signed by Hinchman & Covell, and by the defendant, *William Weston*.                                                  REP.

conceded that it is not essential to a contract of sale that the articles sold and to be delivered in the future should be in existence at the time of the contract. Both parties may contemplate that they are to be manufactured after the contract. But the reasoning of all the cases, as well those where the particular contract in question was held to be one of sale, as those of the opposite class, implies that where it is a part of the very contract itself that the articles are to be manufactured, and by particular persons or from certain specific material, or in a prescribed manner according to the order and direction of the party for whom made, it is a contract for the manufacture and not for the sale. *Hight v. Ripley,* 19 Maine, 137; *Abbot v. Gilchrist,* 38 id. 260; *Edwards v. Railway Co.* 48 id. 379; *Atwater v. Hough,* 29 Conn. 508; *Gardner v. Joy,* 9 Met. 177; *Lamb v. Crafts,* 12 id. 353.

All the various particulars distinguishing a contract of manufacture from one of sale concurred in this contract. The contract provided that the lumber was to be manufactured. It was to be done by particular parties, from certain specified materials then on hand, and, what is specially important, according to the order and direction of the other contracting party. Within all the cases, it was a contract for the manufacture of the lumber; and so the defendant was bound to deliver the lumber to the plaintiff. It was conceded by his counsel that this view of the effect of that contract necessarily disposed of the case against him, without reference to any other questions.

*By the Court.*—The judgment is affirmed.

A motion for a rehearing was denied.