TOLMAN, Appellant, vs. ABBOT and another, Trustees, imp.,
Respondents.

*November 10 — November 25, 1890.*

*Common carriers: Liability for injury to freight on connecting line:
Evidence.*

1. Trustees operating a railroad occupied, at the terminus of the road
   on Lake Superior, a dock with a warehouse thereon at which they
   received and delivered freight which had been or was to be carried
   by vessels on the lake. They had no control over the lake trans-
   portation lines, and no interest in their earnings. On receiving at
   such dock goods which were to be transported on one of such lake
   lines, the said trustees gave a shipping receipt which provided that,
   when freight was received by the trustees to be forwarded by their
   line, their liability should cease at their depot at which the freight
   was to be delivered to another carrier to be transported to its desti-
   nation; that the trustees should not be liable for loss and damage
   on the lakes and rivers, unless caused by their negligence; and that
   "for all loss and damage occurring in the transit of said packages
   the legal remedy shall be against the particular carrier or forwarder
   only in whose custody the said packages may actually be at the
   time of the happening thereof, it being understood that the trustees
   . . . assume no other responsibility for their safe carriage or
   safety than may be incurred on their own road." *Held,* that the
   trustees were not liable for loss or damage happening while the
   goods were in transit on the lake.

2. Testimony as to the methods of the trustees in transacting shipping
   business on their dock with other parties, was immaterial.

3. The fact that a week after the goods were delivered at the dock the
   shipper voluntarily paid freight charges to the dock agent of the
   trustees, and such agent gave a receipt therefor and paid the money
   over to the lake line on account of which he received it, is of no
   significance.

APPEAL from the Circuit Court for *Ashland* County.

At the time the alleged cause of action herein accrued,
the defendants *Abbot* and *Stewart* were trustees in posses-
sion and operating the Wisconsin Central Railroad, having
its northern terminus at the city of Ashland. In the same

capacity they also occupied a dock in that city on Chequamegon bay, and a warehouse thereon, which are connected by tracks with the main line of their railroad.   They received freight at such dock and warehouse for vessels navigating Lake Superior and the other lakes, and delivered the same therefrom on board such vessels to be transported to the respective places of consignment.   These vessels belonged to different lines of common carriers.   One of these, known as the "Brower Line," operated two steamboats between Ashland, Washburn, and Bayfield for the carriage of passengers and freight.   The two places last named are on the Chequamegon bay, opposite Ashland.   The trustees had no interest in any of these lake transportation lines or their earnings, and no control over them or their vessels. The trustees also received freight from such vessels to be delivered to consignees at Ashland, or forwarded by them over their own line or that of some other connecting carrier to its destination.   Such was the general course of the business of the trustees transacted upon their dock and at their warehouse.

In September, 1888, the plaintiff delivered a hack to the trustees at their dock at Ashland to be shipped to Washburn, and the same was so shipped by them on one of the steamers of the Brower Line, in due course of the business. The agent of the trustees gave plaintiff a shipping receipt for the hack, which contains the contract of the parties in respect thereto.   The hack was badly injured by reason of an accident to the vessel just as it reached the wharf at Washburn.

This action was brought to recover damages for such injury.   Originally the trustees and a corporation known as the "Wisconsin Central Company," were the only defendants to the action; but subsequently F. R. Brower, the captain of the steamboat on which the hack was thus shipped, was brought in as a defendant.   At the close of plaintiff's

testimony, the court granted a nonsuit as to the trustees and Wisconsin Central Company, and judgment of nonsuit for such defendants was entered accordingly. The action was retained and tried against the defendant Brower, and the trial resulted in a judgment for plaintiff against him for the damages to the hack assessed by the jury. The case is further stated in the opinion. The plaintiff appeals from the judgment of nonsuit in favor of the original defendants. Brower has no interest in the appeal.

For the appellant there was a brief by *Cole & O'Keefe*, and oral argument by *Rublee A. Cole*.

·For the respondents there was a brief by *Howard Morris*, attorney, and *T. H. Gill*, of counsel, and the cause was argued orally by *Charles M. Morris*. To the point that the contract was not a through contract, but limited the trustees' liability to damage while on their line, they cited *Detroit & M. R. Co. v. F. & M. Bank*, 20 Wis. 123, and cases cited; *Schneider v. Evans*, 25 id. 241; *Rickerson Roller Mill Co. v. G. R. & I. R. Co.* 67 Mich. 110.

LYON, J. The plaintiff alleges in his complaint, in substance, that the defendants are common carriers of freight for hire between Ashland and Washburn, and that as such they agreed with plaintiff safely to· carry the hack from the former to the latter place, but negligently and carelessly failed to do so. This is the *gravamen* of the action. It is quite immaterial whether the action sounds in contract for the breach of the alleged contract, or in tort for a breach of duty by the defendants as common carriers. In either case, the breach of the alleged contract of carriage is the basis of the action; hence it becomes necessary to ascertain what the contract between plaintiff and the trustees really is. It is not difficult to do so, for such contract, and the whole of it, is contained in the shipping receipt delivered by the dock agent of the trustees to plaintiff when the hack

was received upon the dock. Neither of the other defendants is a party thereto.

The contract contains a provision that when freight is received by the trustees to be forwarded by their line, their liability shall cease at their depot at which the freight is to be delivered to another carrier to be transported to its destination. It is also stipulated in the contract that the trustees shall not be liable for loss and damage on the lakes and rivers, unless caused by their negligence; and it is further especially agreed therein that, "for all loss and damage occurring in the transit of said packages" (in this case the hack), "the legal remedy shall be against the particular carrier or forwarder only in whose custody the said packages may actually be at the time of the happening thereof, it being understood that the trustees . . . above named assume no other responsibility for their safe carriage or safety than may be incurred on their own road."

The hack was received by the trustees for the sole purpose of being delivered to a connecting carrier over which they had no control, and in the earnings of which they had no interest; and was so delivered. The damages were incurred while the hack was on the lake and in the possession of such independent connecting carrier, and no agent of the trustees had anything to do with the loss. In view of these undisputed facts, it seems clear that the contract absolves the trustees from liability in this action, even though they received the hack as common carriers, and not merely as warehousemen and forwarders. Had it been shipped over some portion of trustees' line to Ashland, consigned to Washburn under the same contract, it would scarcely be contended that they remained liable for an injury thereto when in the possession of a connecting carrier on the lake. Could they be thus held liable under such a contract, it would seem impossible for a carrier, to whom goods are

delivered to be shipped over the lines of several connecting carriers, to protect himself from liability for loss or injury to the goods occurring while the same are being transported by such other carrier. But in such a case the first and any succeeding carrier may lawfully restrict his liability to losses happening on his own line. Such restrictions are almost universally incorporated into shipping contracts in substantially the same language employed for that purpose in the contract before us. That the terms of the contract are sufficient to accomplish the purpose intended, we cannot doubt. The fact that in this case the hack was delivered to the trustees at the terminus of their line to be taken by another carrier to its destination, instead of having been carried by them to Ashland on their own line, cannot increase their liability. Because of such fact, however, it is probable that the trustees never held the property as common carriers, but only as warehousemen, charged with the single duty of delivering it safely to the lake carrier, for and on account of the plaintiff.

The cases in this court cited to the proposition that this is a through contract of carriage to Washburn are not in point, for the reason that in neither of them did the shipping contract contain the restrictions upon the liability of the carrier which are found in the contract in the present case. The following are the cases referred to: *Peet v. C. & N. W. R. Co.* 19 Wis. 118; *Candee v. Pennsylvania R. Co.* 21 Wis. 582; *Wahl v. Holt,* 26 Wis. 703; *Hansen v. F. & P. M. R. Co.* 73 Wis. 346.

Considerable testimony was introduced by plaintiff for the purpose of showing the methods of the trustees in transacting shipping business on their dock with other parties. This testimony is quite immaterial. The rights and liabilities of these parties must be determined by their contract, which is plain and unambiguous in its terms. Its construction does not depend upon the manner in which

Tolman vs. Abbot and another.

the trustees have conducted business transactions with others in special cases. But we find nothing in such testimony which tends to show that the business of such trustees with other parties was conducted differently than with the plaintiff.

It was proved on the trial that a week after the plaintiff delivered the hack to the trustees' dock agent, he voluntarily paid such agent or his assistant the freight charges thereon to Washburn, and the latter gave him a receipt therefor, and paid the money over to the Brower Line, on account of which it was so received. There is no significance in these transactions, one way or the other.

The plaintiff offered in evidence an expense bill, signed by the dock agent, showing the charges on certain goods shipped from Washburn to one Adler at Ashland by the Brower Line, which includes dockage charged at Washburn and Ashland and the lake freight. Also a manifest or waybill of goods shipped for third parties from the trustees' dock to Washburn on one of the Brower steamboats, on account and at the risk of whom it may concern. These two documents would prove nothing material to the issue in the case, and the court properly sustained an objection to their admission.

So far as the defendant the Wisconsin Central Company is concerned, there is no evidence whatever tending to connect it with the shipment of the hack. Our conclusion upon the whole case is that it conclusively appears the plaintiff has no cause of action against either defendant, except Brower, and he has recovered judgment against Brower for damages to the hack. The nonsuit as to the trustees and the Wisconsin Central Company was properly ordered.

We find nothing in the authorities cited by the learned counsel for the plaintiff opposed to the views expressed.

*By the Court.*— The judgment of the circuit court is affirmed.