LITTLE ROCK & FORT SMITH RAILWAY COMPANY
*v.* ODOM.

Opinion delivered December 19, 1896.

CARRIER—CONVERSION.—An initial carrier which stipulates in the bill of lading for exemption from liability for anything beyond its line, " excepting to protect the through rate of freight named therein," is not liable as for a conversion because of the failure of a connecting carrier to deliver the property at the place of destination upon tender of the freight charges shown by the bill of lading to be due.

Appeal from Johnson Circuit Court.

JEREMIAH G. WALLACE, Judge.

STATEMENT BY THE COURT.

This appeal is to reverse a judgment for $286.90, which appellee recovered of the appellant for an alleged conversion of certain cattle, which appellants agreed to

transport under the following contract: "Arkansas Station, November 3, 1892. This agreement, made between the Missouri Pacific Railway Company, of the first part, and ——— of the second part, witnesseth: That, whereas, the Missouri Pacific Railway Company transports live stock, as per above rules and regulations, all of which are hereby made a part of this contract by mutual agreement between the parties hereto; now, therefore, for the considerations and the mutual covenants and conditions herein contained, the said first party will transport for the said second party the live stock described below, and the parties in charge thereof, as hereinafter provided, viz.: One car, said to contain thirty-nine head of cows, yearlings, ones and twos, from Clarksville, Ark., station, to Checotah station, consigned to E. W. Odom, at the rate of $43 per car, the same being a special rate, lower than the regular rates, or a rate mutually agreed upon between the parties hereto; for and in consideration of which the said second party hereby covenants and agrees as follows:

\*    \*    \*    \*    \*    \* ,   \*    \*    \*    \*    \*

"Twelfth. And it is further stipulated and agreed between the parties hereto that in case the live stock mentioned herein is to be transported over the road or roads of any other railroad company, the said party of the first part shall be released from liability of every kind after said live stock shall have left its road; and the party of the second part hereby so expressly stipulates and agrees; the understanding of both parties hereto being that the party of the first part shall not be held or deemed liable for anything beyond the line of the Missouri Pacific Railway Company, excepting to protect the through rate of freight named herein.   \*    \* Fourteenth. The evidence that the said second party, after fully understanding and accepting all the terms, covenants and conditions of this contract, including the

printed rules and regulations at its head and on the back thereof, and that they all constitute a part hereof, assents to each and all of the same, is his signature hereto.                              " W. B. DUFF, Agent.

" E. W. ODOM, Shipper."

An agreed statement of facts was filed and read in evidence, as follows: "The cattle mentioned in the complaint, thirty-nine head in all, were shipped by the plaintiff, E. W. Odom, on the 3d day of November, 1892, at Clarksville, Ark., to be transported from that point to Checotah, I. T., on a live stock contract or bill of lading, issued by the defendants, railway companies, signed by the agent of the defendants, and by the plaintiff, E. W. Odom. The cattle were shipped in one car, and the rate or amount to be paid by plaintiff was named and written in the contract to be $43 from Clarksville to Checotah. This live stock contract, which is exhibited with plaintiff's complaint, is the only contract which was made between the plaintiff and the defendants in regard to this shipment of cattle. Clarksville is a station on the Little Rock & Fort Smith Railway, and Checotah is a station on the Missouri, Kansas & Texas Railway. In going from Clarksville to Checotah, the cattle had to go over the line of the Little Rock & Fort Smith Railway to Van Buren, Ark., and from Van Buren to Wagoner, I. T., over the Kansas & Arkansas Valley Railway, and from Wagoner to Checotah, over the Missouri, Kansas & Texas Railway; and they did pass over these lines of railroad. The Little Rock & Fort Smith Railway, and the Missouri Pacific Railway Company, for the purposes of this suit, and so far as any liability in respect of these cattle, are to be regarded as one and the same.

The Kansas and Arkansas Valley Railway and the Missouri, Kansas and Texas Railway are separate and distinct corporations from the defendants, and in the

transportation of these cattle they were *connecting carriers* of the defendants. The Missouri, Kansas and Texas Railway is entirely separate and distinct from any of the other railway companies, above mentioned.

The defendant transported the cattle promptly from Clarksville to the end of their line at Van Buren, Ark., and delivered them in good order to their next connecting carrier, the Kansas and Arkansas Valley Railway, and the Kansas and Arkansas Valley Railway transported them promptly, and delivered them in good order at Wagoner, to its connecting carrier, the Missouri, Kansas and Texas Railway, and they were by it promptly transported to Checotah, where they arrived in good order on the morning of November 4, 1892." Plaintiff tendered to the last named carrier the freight charges shown by the bill of lading to be due, but it refused to deliver the cattle, claiming additional freight charges.

*Dodge & Johnson* for appellants.

A carrier has a right to limit its liability, or to contract for exemption from liability, except for its own negligence. 46 Ark. 243; 112 U. S. 337; 47 Ark. 103; 50 *id.* 412; 52 *id.* 30. It may contract against liability for damage or loss happening beyond its own line. 32 Ark. 399; *ib.* 670; 39 *id.* 148; *ib.* 529; 40 *id.* 375; 44 *id.* 209; 35 *id.* 410; 42 *id.* 472; 107 U. S. 106; 155 *id.* 339. After a written contract limiting liability, the consignor, in the absence of fraud, if he had opportunity to read it, cannot avoid it on the ground that he did not read it, or hear it read, and signed it under a mistake as to its contents. 50 Ark. 406. A common carrier is liable for a negligent delay in the transportation of property, but the owner cannot, on account of unreasonable delay in the carriage and delivery, refuse to receive the goods and sue for a conversion. 48 Ark. 502; 54 *id.* 402. The

remedy was to pay the freight, receive the cattle, and sue on the guaranty. 49 Ark. 354. Having contracted against liability beyond the terminus of its line, the defendant is not responsible. 47 Ark. 103; 32 *id*. 399; 39 *id*. 148, 158; *ib*. 529; 40 *id*. 375; 44 *id*. 209; 50 *id*. 412; 52 *id*. 30; 35 *id*. 510; 42 *id*. 472.

*J. E. Cravens* for appellee.

The contract for exemption from liability was invalid. 57 Ark. 112, 127. With the limiting clauses stricken out, under the decisions *supra*, the contract stands as a contract of shipment with the common law liability attaching to appellant as a common carrier on a through bill of lading. The English rule is not invoked, but we stand squarely on the American doctrine that railroads, as common carriers over the lines of other connecting roads, are not responsible, unless by special contract they make themselves liable. 107 U. S. 106; 22 Wall. 123; 6 Otto, 258. When a carrier has transported goods to their point of destination, and refuses to deliver to owner on, demand and tender of freight charges, it amounts to a conversion, especially when the goods are afterwards removed and sold. 1 Cowen, 322; 4 Wend. 613; 32 N. E. Rep. 476.

WOOD, J., (after stating the facts.) Independent of contract, appellants were under no duty or obligation to transport appellee's cattle beyond their termini. *Packard* v. *Taylor*, 35 Ark. 402. There is nothing to show that they had assumed that relation to the public by reason of any usage or the character of their business. Then, since appellants were not, by law, common carriers as to these cattle at the time of the alleged conversion, their liability depends solely upon their contract with appellee. *Piedmont Mfg. Co.* v. *C. & G. R. Co.*, 19 S. C. 353; S. C. 16 Am. & Eng. R. Cases, 194; 3 Wood, Railways, sec. 452a.

The contract was for through transportation from Clarksville, Ark., to Checotah, I. T. But the twelfth paragraph expressly exempts the Missouri Pacific Railway Company from liability "for anything beyond" its line "excepting to protect the through rate of freight named therein." Appellee is bound by the contract. *St. L., I. M. & S. R. Co.* v. *Weakly*, 50 Ark. 397. The cases of *Railway Co.* v. *Cravens* and *Railway Co.* v. *Spann*, 57 Ark. 112 and 127, relied upon by appellee, are not analogous. The court erred in holding appellants liable as for conversion.

Reversed and remanded for a new trial.