ance with a habit which had existed for a long time, and with which defendant was perfectly well acquainted.  In short, it might almost have been found that defendant in keeping or harboring, as he did, the dog in question, with knowledge that it was accustomed to harass travelers on the highway, was quite indifferent to their rights.

Plaintiff, at the time of the accident, was a married woman, and therefore not entitled to recover anything for loss of services, or for expenses of medical or surgical treatment.  She can only recover such damages as will fairly compensate her for the pain and suffering and physical impairment which she has incurred.  While she sustained quite considerable and painful injuries outside of those to her knee and leg, the latter were still the main ones, both in point of suffering and permanency.  We are inclined to think, however, that it is not probable that the latter will result in entire loss of the use of the leg, but that she will be able to have quite a substantial use thereof.  Taking this view, and also having in mind, upon the other hand, that there is nothing in this case which requires us to measure damages by any such rule as will result in injustice to the plaintiff, we conclude that a reduction of the verdict to $4,000 will be proper.

The judgment and order appealed from therefore are reversed, and a new trial granted, with costs to appellant to abide event, unless plaintiff stipulates to reduce the recovery to $4,000, in which case said judgment as thus modified and order are affirmed, without costs of appeal to either party.  All concur.

———

(36 Misc. Rep. 181.)

### HARRIS v. MINNEAPOLIS, ST. P. & S. STE. M. R. CO.

(Supreme Court, Appellate Term.  October, 1901.)

CONNECTING CARRIERS—DELAY—LIABILITIES.

> A shipping receipt issued by a carrier provided that it should not be liable for any damage by causes beyond its control, nor for loss or damage not occurring upon its own road.  *Held*, that where a connecting carrier delivered goods received to the next connecting carrier without negligence on its part it is not liable to its assignor for delay because of a subsequent transaction between the last connecting carrier and the consignee, whereby the goods were stored at the terminus, by his request, until he could communicate with his consignor, which resulted in the absolute refusal of the consignee to receive the goods five weeks later.

Appeal from municipal court, borough of Manhattan, Second district.

Action by Louis F. Harris against the Minneapolis, St. Paul & Sault Ste. Marie Railroad Company.  Judgment for plaintiff, and defendant appeals.  Reversed.

Argued before FREEDMAN, P. J., and McADAM and GILDERSLEEVE, JJ.

Townsend & McClelland, for appellant.
Louis C. Levy, for respondent.

FREEDMAN, P. J.  This appeal is taken by the defendant (appellant) from a judgment rendered by the municipal court for the

Second district in favor of the plaintiff (respondent). This action was brought, as the return states, for damages to personal property. The facts are not in dispute, and are now presented by the stipulation appearing in the return. Such facts show that the merchandise was delivered to the Merchants' Despatch Transportation Company on the 16th day of July, 1900, consigned to F. G. Trottman at Fergus Falls, Minn. The Merchants' Despatch promptly delivered the merchandise to the defendant, a connecting carrier at Buffalo. The defendant promptly delivered the same at Minneapolis, Minn., to the Great Northern Railway, a connecting carrier, and the last-named carrier transported the goods over its line to Fergus Falls, the place of destination, which point was reached on the 4th day of August, 1900. No claim is made or can be made that the goods were not promptly transported. The agent of the Great Northern Railway promptly gave notice to the consignee of the arrival of the merchandise. At the request of the consignee, the merchandise was permitted to remain in a freight house at Fergus Falls until the consignee could communicate with the consignor. The merchandise remained in said freight house under said agreement between the consignee and the agent of the Great Northern Railway Company until the 12th day of September, 1900, when the consignee refused to accept the goods. Notice of such refusal was given to the consignor by the Merchants' Despatch on the 8th day of November, 1900. The Merchants' Despatch then requested of the consignor instructions for the disposal of the merchandise, and on the 30th day of December, 1900, the consignor gave instructions that the merchandise should be shipped to the O. J. Lewis Mercantile Company, at St. Louis, Mo., and at the same time surrendered to the Merchants' Despatch the original shipping receipt. In pursuance of the said instructions, the merchandise was shipped to St. Louis, was duly received there, and under further instructions from the consignor was sold at auction. The merchandise was what is known as "seasonable goods," and by the stipulation it was conceded that, "had the consignor received immediate notice that the goods were not promptly accepted upon their arrival at Fergus Falls, he would have been able to have disposed of them for a higher price than that realized at auction." Prior to the commencement of this action the consignor duly sold and assigned to the plaintiff in this action any and all claim and demand which he might have against the defendant growing out of the foregoing statement of facts.

The counsel for the plaintiff claims in his brief that the action is purely in tort, founded upon negligence, and not upon breach of contract, and the negligence is claimed to consist: (1) That the defendant delayed in giving notice to the consignor of the non-acceptance of the goods by the consignee; and (2) that, instead of delivering the goods, the carrier entered into an agreement with the consignee which was inconsistent with the duty the carrier owed to the consignor. The facts disclosed fail to sustain this contention, so far as the present defendant is concerned. The defendant was a connecting carrier, and its whole duty was prima facie dis-

charged when by it the goods were delivered to the next connecting carrier, viz. the Great Northern Railway. The last-named carrier promptly transported the goods over its line to Fergus Falls, the place of destination, and upon their arrival at the said place promptly notified the consignee. Now, the consignee did not, in the first instance, refuse to accept the goods. He desired to communicate with the consignor before accepting them, and requested that in the meantime the goods should be kept in the freight house. The Great Northern Railway could not well have refused this request, and had a right to assume that the consignee would communicate with the consignor within a reasonable time. Mere compliance with such request clearly was not a negligent act, nor did its failure to give immediate notice to the consignor constitute negligence under the circumstances. Such notice would have given to the consignor no information beyond what the consignee had assured the railroad company he would give. Whether the duty to notify the consignor arose afterwards, and whether, after it had arisen, there was unnecessary delay, are more difficult questions. The authorities are very conflicting as to when and under what circumstances it becomes the duty of a carrier to notify the consignor of his inability to make immediate delivery, and, if this action had been brought against either the Great Northern Railway or the Merchants' Despatch, its proper determination would require extended discussion of the facts and of the rules of law concerning the liabilities of carriers as such and as warehousemen. But in the case at bar it is not necessary. The defendant was a connecting carrier. It promptly carried the goods, and promptly delivered them to the next connecting carrier, to be carried to their destination. The latter was not the agent of the defendant, but an independent carrier. There is not a scintilla of evidence that the defendant had any knowledge or notice that the consignee had not accepted the goods, but had requested time to communicate with the consignor. Nor is there any evidence that the defendant was finally notified of the consignee's refusal to accept the goods. The plaintiff, therefore, wholly failed to establish negligence in the defendant. Not having been guilty of any negligence, the defendant is exempted from liability under the provisions of the contract of shipment embodied in the shipment receipt. This expressly provides that no carrier shall be liable for any damage by causes beyond its control, and that no carrier shall be liable for loss or damage not occurring on its own road, or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee.

For the reasons already stated, the judgment must be reversed, and consequently it is unnecessary to consider the points raised as to the damages.

Judgment reversed, and new trial ordered, with costs to appellant to abide event. All concur.