[Civil No. 1778. Filed June 18, 1920.]

[190 Pac. 564.]

## SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. R. C. LARRIMORE, Appellee.

1. CARRIERS—INITIAL CARRIER CONTRACTING FOR THROUGH TRANSPORTATION MAY LIMIT LIABILITY TO OWN LINE.—Any obligation of a carrier to transport goods beyond its own terminus being a matter of contract, and not a legal duty, it may, if contracting for through transportation, limit its liability to its own line; this not being a limitation of its common-law liability as carrier.

2. PLEADING—SPECIFIC CHARGE AFTER GENERAL AVERMENT HELD NOT TO SHOW UNREASONABLE DELAY ON LINE OF INITIAL CARRIER.— Complaint against initial carrier, which contracted to carry to destination on another line, by contract limiting liability to its own line, charges no unreasonable delay on its own line; a sweeping charge of unreasonable delay in transportation between initial point and a point on line of connecting carrier being followed by particulars stating the delay was at the latter point.

---

1. Validity of stipulation in bill of lading limiting liability of connecting carrier to its own line, see note in 7 Ann. Cas. 471.

1. Authorities upon the question of liability for negligence of connecting carrier are collected in note in 106 Am. St. Rep. 604.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz. W. A. O'Connor, Judge. Judgment reversed without remanding cause.

### STATEMENT OF FACTS.

The appellee by his original complaint in this action sought to recover damages of the appellant, alleged to have accrued to appellee by reason of injury to sixty-nine head of mules, caused through the negligence of appellant in transporting same from Nogales, Arizona, to Buckeye, Arizona, under contract with the appellee. The appellee amended his complaint and brought in the Arizona Eastern Railroad Company as a party defendant, and alleged:

That the Southern Pacific Company's lines of railroad extend from Nogales, Arizona, to Maricopa, Arizona, and that the Arizona Eastern Railroad Company's line of railroad begins at Maricopa and extends through Phoenix to Buckeye, Arizona; "that the plaintiff [appellee] is informed and believes, and therefore alleges, that the line of the Arizona Eastern Railroad Company aforesaid from Maricopa to Buckeye is under the control of the said defendant Southern Pacific Company, and that the Southern Pacific Company engaged the defendant Arizona Eastern Railroad Company to transport and convey said mules from Maricopa, Arizona, to Buckeye, Arizona."

The appellant, Southern Pacific Company, sets forth in its answer:

That the sixty-nine mules were received for shipment January 28, 1915, and were shipped in two cars from Nogales, Arizona, to Buckeye, Arizona, under a written contract entered into January 27, 1915, by which "plaintiff expressly agreed to and with the defendant (Southern Pacific Company) that in case said livestock should be destined to any point off the railroad of this defendant, the responsibility of this defendant, whether as common carrier or otherwise, should cease and utterly determine upon arrival of said livestock at the station where said livestock

should leave the railroad of the defendant in the course of such transportation to destination, and that this defendant should not be liable or responsible to plaintiff for any loss or damage whatsoever that might occur to said animals after same left its said line of railroad, or that might occur to said animals on any of defendant's connecting carriers."

The answer of the Southern Pacific Company further states:

"That the defendant transported said animals without any unusual delay and without any rough handling from the said town of Nogales, Arizona, to the station of Maricopa, Arizona, on the line of railroad of defendant, and delivered said animals at said station of Maricopa at about 3 o'clock A. M. January 29, 1915, in as good condition as it had received them, to that certain other railroad company, to wit, the Arizona Eastern Railroad Company, a separate and distinct corporation from this defendant."

The answer further denies that any damage was done to the mules through the negligence of the defendant, and avers that, if any damage was done to the mules by the connecting carrier (Arizona Eastern Railroad Company), the defendant was not responsible therefor, under its contract with the appellee.

The jury returned a verdict against each company for $300, that is, against the Southern Pacific Company for $300, and against the Arizona Eastern Railroad Company for $300, and judgment was rendered accordingly. The Southern Pacific Company alone appeals.

Mr. Francis M. Hartman, for Appellant.

Messrs. Barry & Barry, for Appellee.

BAKER, J. (After Stating the Facts as Above.)— The undisputed evidence shows that the appellant received sixty-nine mules from the appellee at Nogales, Arizona, destined to Buckeye, Arizona, a station on the

line of the Arizona Eastern Railroad Company, and loaded them into two cars, and carried them to Tucson, Arizona, and thence to Maricopa, Arizona, where the cars containing the mules were delivered to the said Arizona Eastern Railroad Company, a connecting carrier, and was by the last-named company carried to Phoenix, Arizona. The Arizona Eastern Railroad Company was unable to transport the animals any farther towards Buckeye, Arizona, their destination, owing to a washout on its road, and they remained in Phoenix for several days in a crowded, muddy and filthy corral, where they were prevented from lying down and resting. The appellee finally receipted for the mules at Phoenix and drove them himself to Buckeye. The delay in transportation of the animals and their ill treatment at Phoenix resulted in damages to the appellee. The question is whether the appellant is liable for these damages. Independent of contract, the appellant was under no duty or obligation to transport appellee's mules beyond its own terminus. 1 Hutchinson on Carriers, § 226. Then, since appellant was not by law a common carrier as to the mules at the time of the occurrence of the alleged damages on the line of the Arizona Eastern Railroad Company, its liability depends solely upon its contract with appellee. 3 Wood on Railroads, par. 452a. The written contract between the parties for the shipment of the mules called for through transportation from Nogales, Arizona, to Buckeye, Arizona. If this were all of the contract, the appellant would be liable for the damages occurring to the mules because of the default of the Arizona Eastern Railroad Company, but the contract for through transportation contained the express stipulation that—

"The responsibility of the first party, whether as common carrier or otherwise, shall cease and utterly determine upon the arrival of said livestock at the

station where the said livestock is to leave the road of the first party in the course of transportation to destination.''

The undisputed evidence shows that the station referred to in the contract was Maricopa. This stipulation in the contract was binding upon the appellee. It is well settled that the obligation of a carrier to transport goods beyond the terminus of its own line being a matter of contract, and not a legal duty, the carrier may if he contracts for through transportation, by the contract limit his liability to his own line; for such a limitation does not relieve him from his common-law liability safely to carry and deliver to the connecting carrier. 1 Hutchinson on Carriers, § 233; 4 Elliott on Railroads, par. 1438; *Myrick* v. *Railway Co.,* 107 U. S. 102, 27 L. Ed. 325, 1 Sup. Ct. Rep. 425 (see also, Rose's U. S. Notes); *Atlantic Coast Line Ry. Co.* v. *Riverside Mills,* 219 U. S. 186, 31 L. R. A. (N. S.) 7, 55 L. Ed. 167, 31 Sup. Ct. Rep. 164; *Dodge* v. *Chicago, St. P., M. & O. Ry. Co.,* 111 Minn. 123, 126 N. W. 627; *Little Rock & Ft. S. Ry. Co.* v. *Odom,* 63 Ark. 326, 38 S. W. 339; *Jones* v. *Railway Co.,* 89 Ala. 376, 8 South. 61; *Railroad Co.* v. *Shomo,* 90 Ga. 496, 16 S. E. 220; *Hoffman* v. *Railway Co.,* 8 Kan. App. 379, 56 Pac. 331; *Railroad Co.* v. *Bourne et al.,* 15 Ky. Law Rep. 445; *Fremont etc. Ry. Co.* v. *New York etc. Ry. Co.,* 66 Neb. 159, 59 L. R. A. 939, 92 N. W. 131; *Harris* v. *Railroad Co.,* 36 Misc. Rep. 181, 73 N. Y. Supp. 159; *Bird* v. *Railway Co.,* 99 Tenn. 719, 63 Am. St. Rep. 856, 42 S. W. 451; *Hunter* v. *Railroad Co.,* 76 Tex. 195, 13 S. W. 190; *Tolman* v. *Abbot,* 78 Wis. 192, 47 N. W. 264; *Illinois Cent. R. Co.* v. *Frankenberg,* 54 Ill. 88, 5 Am. Rep. 92.

In *Atlantic Coast Line R. Co.* v. *Riverside Mills, supra,* Mr. Justice Lurton, speaking of a provision in a contract exempting the initial carrier from lia-

bility for a loss or damage not occurring on its own portion of the route, says:

"Such a provision is not a contract for exemption from a carrier's liability as such, but a provision making plain that it did not assume the obligation of a carrier beyond its own line, and that each succeeding carrier in the route was but the agent of the shipper for a continuance of the transportation. It is therefore obvious that at the common law an initial carrier under such a state of fact would not be liable for a loss through the fault of the connecting carrier to whom it had, in due course, safely delivered the goods for further transportation"—citing *Railroad Co.* v. *Pratt*, 22 Wall. 123, 22 L. Ed. 827; *Myrick* v. *Railroad Co.*, 107 U. S. 102, 27 L. Ed. 325, 1 Sup. Ct. Rep. 425; *Southern Pac. Co.* v. *Interstate Commerce Commission*, 200 U. S. 536, 554, 50 L. Ed. 585, 26 Sup. Ct. Rep. 330 (see also, Rose's U. S. Notes).

The allegation in the appellee's amended complaint that "plaintiff is informed and believes, and therefore alleges, that the line of the Arizona Eastern Railroad Company aforesaid from Maricopa to Buckeye, Arizona, is under the control of the said defendant Southern Pacific Company," remained wholly unproven. The undisputed evidence shows that the Arizona Eastern Railroad Company was an independent line not under the control of the appellant, and owned, operated, and controlled its own railroad and auxiliary property. There is therefore no reason to charge the appellant with liability for the damages on the ground that the Arizona Eastern Railroad Company was under its control, or that any partnership relation existed between the appellant and that company.

Enough has been said to show that the appellant was not liable for the damages resulting from the default of the Arizona Eastern Railroad Company in the transportation and ill treatment of the mules.

But the appellee insists that the appellant was responsible for negligence occurring on its own line.

The complaint does not charge any unreasonable delay in transporting the mules over the line of the appellant. The facts set forth in the complaint as constituting a breach of the contract of carriage are as follows:

"That, in violation of said agreement, defendants failed and neglected to transport and deliver said mules to the destination hereinabove mentioned, with safety and without unreasonable delay; that at Phoenix, Maricopa county, Arizona, said mules were held by defendant's agents until the second day of February, 1915, in a crowded, muddy, filthy and excessively damp corral, where, by reason of the said condition of the said corral, they were prevented from lying down and resting; that said defendants and its agents wholly failed, neglected, and refused to transport said mules from Phoenix to Buckeye, and by reason of such failure, neglect and refusal plaintiff was obliged to, and did, drive said mules on foot from Phoenix to Buckeye on or about the tenth day of February, 1915; that on the thirtieth day of January, 1915, when plaintiff was notified by defendants' agents that said mules would not be transported by rail further than Phoenix, a total of more than forty hours had been wasted in transporting said mules by said defendants and their agents; that by reason of the delay in transporting said mules and the ill usage to which said mules were subjected, as hereinabove described, said mules depreciated in value between Nogales and Phoenix to the extent of $15 per head, or $1,035 in all. . . . "

While there is a sweeping charge of unreasonable delay in transporting mules from Nogales to Phoenix, the pleader descends to particulars by stating that the delay was at Phoenix, and that the injury occurred there, and by reason of defendants' failure to transport mules from Phoenix to Buckeye. There is no allegation of unreasonable delay or injury or negli-

gence between Nogales and Maricopa, the distance the mules were transported over the appellant's line.

In *Ecton* v. *Chicago, B. & Q. Ry. Co.*, 125 Mo. App. 223, 102 S. W. 575, it is said:

"Plaintiff based his right to recover in his pleadings on defendant's negligence in delaying trains at numerous points."

And it was held he was confined to his allegations. The court said:

"No other sort of negligence is pleaded, and it is a fundamental rule, constantly enforced, that when the charge is specific, no other can be urged than that which is specially pleaded. *Chitty* v. *Railway Co.*, 148 Mo. 75 [49 S. W. 868]; *Grissmore* v. *Railway Co.*, 118 Mo. App. 387 [94 S. W. 306]; *Breeden* v. *Mining Co.*, 103 Mo. App. 176 [76 S. W. 731]."

In the *Chitty case*, 148 Mo. 64, 49 S. W. 868, the rule is stated as follows:

"It is furthermore the law that, when a plaintiff alleges specific acts of negligence on the defendant's part, his evidence, and likewise his right of recovery, will be limited to the specific acts charged, and this rule obtains even where a general averment of negligence precedes the averment of specific acts of negligence in the petition."

If it be granted that there was evidence of delay on the appellant's line, it is aside from any allegation of the complaint that it was unreasonable or negligent, or that damages were sustained by reason thereof. The only delay or negligence charged is at Phoenix, and thence to Buckeye, all occurring on the line of the Arizona Eastern Railroad Company.

The complaint shows clearly that it was drawn upon the theory that the appellant was liable under the contract of carriage for delay or injury to stock, negligently occurring on the line of the connecting carrier, and, since we have found otherwise, it follows that no liability is alleged or proved as against the appellant.

The curious situation is presented in the case of judgment for separate amounts against the appellant and the Arizona Eastern Railroad Company. Upon appellee's theory of the case, the only verdict and judgment authorized was one against the appellant for the whole amount of the damages. It was error to enter judgment against each one of the companies, but, since the Arizona Eastern Railroad Company does not appeal, and remains satisfied with the judgment against it, we make no further mention of the error, only to say that certainly the appellee has no cause to complain of the result. He is lucky.

From what has been said it necessarily follows that it was error to refuse the appellant's motion for an instructed verdict. The judgment is reversed, without remanding the cause.

ROSS, J., concurs.

CUNNINGHAM, C. J. (Dissenting.)—I do not concur in the construction placed on the special shipping contract by the majority opinion. The liability of the Southern Pacific Company for injury to the animals while such animals were in the custody of the Arizona Eastern Railroad Company as a connecting carrier is determined from the special contract of shipment.

Without any doubt, the Arizona Eastern Railroad Company acted as the agent for the initial carrier, the Southern Pacific Company, in performing a number of obligations assumed by the Southern Pacific Company by such special contract. The special contract provides that, in case it becomes necessary to deliver the animals to the shipper at an intermediate point before the destination named in the contract is reached, such delivery may be made, after notice, and when notice is given delivery must be accepted by the shipper. The Arizona Eastern Railroad Company delivered the animals at Phoenix for the reason

it was unable to deliver them at the destination named in the contract because of floods and destruction of its railroad between Phoenix and Buckeye, the destination named in the special contract. Thus the connecting carrier performed that condition of the special contract for and in behalf of the principal, the Southern Pacific Company.

The special contract provided that the shipper would be furnished transportation from the point of shipment to the destination named in the contract and return to starting point for one person to accompany the animals in case the shipment comprised two carloads of animals. Two cars were shipped, and at Phoenix the Arizona Eastern Railroad Company changed the original contract naming the destination as Buckeye to read Phoenix, because of said floods, and issued to the shipper a return ticket from Phoenix to Nogales, in strict conformance with the condition of the Southern Pacific's special contract. The only theory upon which the said transportation could have been issued, entitling the holder to travel over the separate and connecting roads in return from the point of destination as finally established, Phoenix, to Nogales, the starting point, is that of performance of the original special carriage contract. The Arizona Eastern Railroad Company, in so performing such condition, certainly did so for and in behalf of the Southern Pacific Company, the contractor. The freight bills cover the charges for the entire distance from Nogales to Phoenix. The charge for such entire distance is $58 per car, and the additional sum of $1 per car advanced. These freight bills are issued by the Arizona Eastern Railroad Company, and the bill for each car bears notation that the car to which it relates was diverted to Phoenix because of the inability of the company to take shipment to destination.

The shipper paid said freight bills at Phoenix, as demanded. Can it be claimed that the Arizona Eastern Railroad Company was not the agent of the Southern Pacific Company for the purposes of demanding and collecting the freight charges for entire distance, including the service of the Southern Pacific Company? I think not. These circumstances, in my opinion, clearly permit of no inference other than that the Arizona Eastern Railroad Company acted as the agent of the Southern Pacific Company in the performance of the shipping contract; certainly it was the agent of the Southern Pacific Company in the performance of the conditions in the contract it is conclusively shown to have performed.

This being the case, what kind of a contract existed by which it carried the two cars of animals from Maricopa to Phoenix? I am of the opinion that such service was rendered at the instance of the Southern Pacific Company and by the Arizona Eastern Railroad Company as the agent of the Southern Pacific Company, and not as the party contracting with the shipper by an independent agreement; that the connecting line of the Arizona Eastern Railroad Company is the instrumentality used by the Southern Pacific Company with the use of which the Southern Pacific Company was able to and did perform its special contract. The power of the Southern Pacific to contract to ship the freight the entire distance provided for in the contract, including a shipment over connecting lines, is not disputed. Such is the law unless the charter of the corporation provides otherwise. *Railroad Co.* v. *Pratt,* 22 Wall. 126, 22 L. Ed. 827; *Ohio & M. Ry. Co.* v. *McCarthy,* 96 U. S. 258, 24 L. Ed. 693 (see also, Rose's U. S. Notes).

But the contention is that the Southern Pacific Company is exempt from liability for damages occurring to the animals while they were in the care of the

connecting carrier, and that the injury arising from any cause is conceded to have .occurred after the Arizona Eastern Railroad Company took the shipment at Maricopa into its care. The special contract of shipment contains the stipulation relied upon as exempting from liability.

The contract does not name an amount as a rate agreed upon, but sets forth that the shipper, "in consideration of a special rate which is thus attained, and of divers other good and sufficient considerations," enters into the contract. The contract contains the stipulation as follows:

"It is hereby further understood and agreed by second party that in case the livestock herein described be destined to any point off the railroad of the first party, or to a point beyond the destination to which the rate is named herein, all common carriers engaged in the transportation of said livestock to destination of said livestock shall have and enjoy the special privileges and exemptions herein accorded to first party, when the rate or rates charged by such common carrier or carriers conditioned on agreement limiting carriers' liability: Provided, however, that the responsibility of first party, whether as common carrier or otherwise, shall cease and utterly determine upon arrival of said livestock at the station where the said livestock is to leave the road of the first party in the course of transportation to destination: Provided, further, that Southern Pacific Company is not to be," etc.

No connecting road is mentioned in the contract. There was no mention of compensation to any other party, and nothing was said of change to any other company on the way from Nogales to Buckeye.

I am content to understand from this stipulation that the liability of first party, whether as common carrier or otherwise, shall cease and utterly determine upon arrival of said livestock at the station where the livestock is to leave the road of the first party in course of transportation to destination whenever the

contract provides that connecting carrier shall assume the duty of carrying the livestock to destination, by an agreement with the shipper. To a certainty, the liability of the initial carrier does not cease under the common law while the connecting carrier is engaged in the capacity of agent for the initial carrier in performing the special shipping contract. In order to avoid liability for any of the acts of its agent, such exemption from liability must be expressed in unequivocal terms. *Mynard* v. *Syr., B. & N. Y. R. R. Co.,* 71 N. Y. 180, 27 Am. Rep. 28.

It is well settled that a common carrier cannot by notice or special contract limit his liability so as to exonerate him from responsibility for his own negligence or misfeasance, or that of his servants and agents. *The Pacific Deady,* 17 Fed. Cas. No. 12,644; *Philadelphia R. Co.* v. *Derby,* 14 How. 486, 14 L. Ed. 502; *York Co.* v. *Central R. R.,* 3 Wall. 107, 18 L. Ed. 170; *Walker* v. *Transportation Co.,* 3 Wall. 150, 18 L. Ed. 172; *Express Co.* v. *Kountze Bros.,* 8 Wall. 342, 19 L. Ed. 457; *Railroad Co.* v. *Mfg. Co.,* 16 Wall. 318, 21 L. Ed. 297 (see also, Rose's U. S. Notes); *Steamboat New World* v. *King,* 16 How. 469, 14 L. Ed. 1019; *Mobile & O. R. R. Co.* v. *Hopkins,* 41 Ala. 486, 94 Am. Dec. 607; *Empire Transp. Co.* v. *Wamsutta Oil Co.,* 63 Pa. 14, 3 Am. Rep. 515; *Knowlton* v. *Erie R. R. Co.,* 19 Ohio St. 260, 2 Am. Rep. 395; *Graham* v. *Davis,* 4 Ohio St. 362, 62 Am. Dec. 285; *Jones* v. *Voorhees,* 10 Ohio, 145; *Fillebrown* v. *G. T. Ry. Co.,* 55 Me. 462, 92 Am. Dec. 606; *Sager* v. *Portsmouth,* 31 Me. 228, 50 Am. Dec. 659; *Michigan S. R. R.* v. *Heaton,* 37 Ind. 448, 10 Am. Rep. 89; *Ohio & M. R. R. Co.* v. *Shelby,* 47 Ind. 471, 17 Am. Rep. 719; *School Dist. etc.* v. *Boston R. R. Co.,* 102 Mass. 552, 3 Am. Rep. 502; *Adams Express Co.* v. *Stettaners,* 61 Ill. 184, 14 Am. Rep. 57; *Nashville R. R. Co.* v. *Jackson,* 6 Heisk. (Tenn.) 271; *Ketchum* v. *American Exp. Co.,* 52 Mo. 390; *New Orleans Mut.*

*Ins. Co.* v. *New Orleans R. R. Co.,* 20 La. Ann. 302; *Southern Exp. Co.* v. *Moon,* 39 Miss. 822; *Steele* v. *Townsend,* 37 Ala. 247, 79 Am. Dec. 49; *Berry* v. *Cooper,* 28 Ga. 543; *Swindler* v. *Hilliard,* 2 Rich. (S. C.) 286, 45 Am. Dec. 732; *Flinn* v. *Philadelphia etc. R. R. Co.,* 1 Houst. (Del.) 469; *Parsons* v. *Monteath,* 13 Barb. (N. Y.) 363; *Moore* v. *Evans,* 14 Barb. (N. Y.) 524; *Central R. & Bank. Co.* v. *Hasselkus,* 91 Ga. 382, 44 Am. St. Rep. 37, 17 S. E. 838.

The general words of exemption used in this contract are "that the responsibility of first party, whether as carrier or otherwise, shall cease and utterly determine upon arrival of said livestock at the station where the said livestock is to leave the road of the first party in the course of transportation to destination." This, of course, is whenever a connecting carrier has assumed to carry the shipment on its own responsibility under a contract with the shipper, expressed or implied. But, if the general words can be given effect without including negligence, the contract will not release from the negligence. *Holsapple* v. *Rome, W. etc. R. R. Co.,* 86 N. Y. 275; *Mynard* v. *Syr., B. & N. Y. R. R. Co.,* 71 N. Y. 180, 27 Am. Rep. 28, *supra.* The leading cases upon the questions of the power of common carriers to limit their common-law liability as such carriers are *Hollister* v. *Nowlen,* 19 Wend. (N. Y.) 234, 32 Am. Dec. 455, and *Cole* v. *Goodwin,* 19 Wend. (N. Y.) 251, 32 Am. Dec. 470. The exhaustive notes annexed to such cases need no discussion.

The plaintiff claims that the mules were injured by the carelessness and negligence of the carrier, and the general words of the special contract relied upon by the Southern Pacific Company to exempt it from liability are broad enough to cover negligence of its servants and agents. Such stipulation is ineffective to exempt the carrier from liability for injury occur-

ring through the negligence of its servant or its agent, the connecting carrier.

I therefore dissent from the construction placed on the special shipping contract in evidence. I dissent from the force and effect given the contract. I do concur in the order reversing the judgment against the Southern Pacific Company. I do not concur in the order rendering a judgment in this court in favor of the Southern Pacific Company. I am of the opinion that the cause should be remanded, with instructions to the lower court to grant a new trial as the rights of the parties may appear. In no case should the plaintiff be permitted to recover from the Southern Pacific Company the amount recovered from the Arizona Eastern Railroad Company if the said judgment is satisfied. Otherwise the plaintiff would be allowed a double recovery for injuries suffered from the negligence of the Southern Pacific Company through its agent, the Arizona Eastern Railroad Company. When the agent has satisfied the judgment for such injuries, the principal's liability ceases.